FOURNET, Chief Justice.
Separate suits were filed in the district court by Julian E. Rogillio and his wife, and by Charles DeLaune and his wife, against Eugene Cazedessus, individually and as natural tutor of his minor son, Michael Cazedessus (aged fifteen years) and the public liability insurers of the said Eugene Cazedessus,[1] and against William J. Oliver, Jr. and his liability insurer,[2] to recover against them jointly and in solido for damages incurred by each plaintiff as a result of a collision at an intersection in the City of Baton Rouge on December 31, 1957, at approximately 9 p. m. between a Chevrolet Sedan owned by defendant William J. Oliver, Jr. and being driven by Michael Cazedessus and a Chevrolet Pickup *189 truck being driven by plaintiff Rogillio in which Mrs. Rogillio and Mr. and Mrs. DeLaune were passengers. The cases were consolidated for the purpose of trial in the lower court, and the negligence of Michael Cazedessus was conceded to have been the sole proximate cause of the collision and resulting damages- — the disputed issues being which of the defendants must bear the liability under their respective policies and the question of quantum. There were separate judgments dismissing the cases against William J. Oliver, Jr. but declaring his insurer, Fidelity & Casualty Company of New York, to be the primary insurer and obliged to discharge the full amount found to be due each of the plaintiffs,[3] failing in which the judgment in each case was to remain in full force and effect against Eugene Cazedessus and his two insurers, Western Assurance Company and St. Paul Fire & Marine Insurance Company, in solido. On appeal to the Court of Appeal, First Circuit, by the insurance company primarily cast, to which appeal all plaintiffs filed answers seeking an increase in their respective awards, the judgment was affirmed. See Rogillio v. Cazedessus, 122 So.2d 897, and DeLaune v. Cazedessus, 122 So.2d 902. The cases are now before us for review on writs granted upon application of Fidelity & Casualty Company of New York; the plaintiffs have filed in this Court a “Memorandum” seeking an increase in quantum of awards made by the Courts.
The pertinent facts as found by the courts below are that on New Year’s eve, 1957, William Oliver III, then seventeen years of age, with the permission of his father, William J. Oliver, Jr., to use the Chevrolet car involved in this accident, drove to the Cazedessus home on the outskirts of Baton Rouge to pick up “Lad” Cazedessus, a boy of the same age, they having planned to escort two girls to the High School New Year’s Eve dance. When young Oliver and his companion drove up, it was decided between the boys to use one of the Cazedessus cars, and to leave the Oliver Chevrolet there, parked on the paved area fronting the three-car garage. Fifteen year old Michael Cazedessus, who was to remain at home with his younger sister (Mr. and Mrs. Cazedessus had already departed for the evening), asked Oliver if he didn’t want to leave his car keys, whereupon Oliver tossed the keys to Michael, saying that it might be necessary to move the car. Michael hung the keys on a rack customarily used by the *191 family for the purpose, and some fifteen minutes after the departure of the others, drove the car into the city and was involved in the accident which gave rise to this suit.
The trial Judge, stating in his written reasons that he was deciding the question ■on what he believed the jurisprudence to be — namely, that if the operator of the car has the owner’s permission to use it the insurer of the car is liable for any damages, and once the permission is granted, though for a specified use, even though the permittee should deviate grossly therefrom, the insurer of the car is still liable — found that young Oliver unquestionably had permission to use the Chevrolet, that in the eyes of the law he granted permission to Michael Cazedessus to drive the Oliver automobile,[4] and the liability therefore rests on the insurer of William J. Oliver, Jr. under the doctrine of Brooks v. Delta Fire & Casualty Co., La.App., 82 So.2d 55, in which writs were denied by this Court. In affirming the judgment, the Court of Appeal observed that while Mr. Oliver, according to his testimony, had instructed his son not to permit other children to drive the automobile, and conceding that by leaving the keys young Oliver granted to Michael a permission to use the car which was very restrictive in nature, it was nevertheless permission, and any use by the unlicensed minor in derogation thereof was nothing more than deviation— which under our jurisprudence is immaterial, once original consent or permission is granted.
The sole issue is whether young Oliver without knowledge of the named insured could by his actions constitute another person a permittee so as to place responsibility for the ensuing damage on the liability insurer of the car’s owner. Resolution of this question depends upon the construction to be given a clause in the policy with reference to the facts of this case.
The contracts of insurance issued by Fidelity & Casualty Company, by Western Assurance Company and by St. Paul Fire & Marine Insurance Company are of the type known as standard Family Automobile Policy. Under “Part I — Liability” there is a subdivision headed “Persons Insured” which declares: “The following are insureds under Part I: (a) With respect to the owned automobile, (1) the named insured and any resident of the same household, (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured; * * There is also a subdivision “Definitions Under Part I” containing the following statements : “Under Part I: ‘named insured’ means the individual named in *193 Item 1 of the declarations and also includes his spouse, if a resident of the same household; ‘insured’ means a person or organization described under ‘Persons Insured’; ‘owned automobile’ means a private passenger * * * automobile * * * owned by the named insured * * (Italics ours.) In the policy issued by Fidelity & Casualty Company of New York (see footnote 2), “Item 1” of the “declarations page” states: “Named insured: William J. Oliver, Jr.” The above provisions are controlling with respect to the liability, if any, of that company.
Counsel for Fidelity & Casualty Company deny that Michael Cazedessus was an omnibus insured under the Oliver policy, contending that according to the express provisions quoted above, the “named insured” alone, as defined in the policy, could give the “permission” required to effectuate coverage as an omnibus insured; and argue that the district and appellate courts have erred in their interpretation of language in recent cases on the question of deviation, with the result that there has been an unwarranted extension of the initial permission rule. In any event, affirming that where there is no initial permission, the question of deviation does not enter the picture, counsel contend — on authority of Dominguez v. American Casualty Company, 217 La. 487, 46 So.2d 744—there must be evidence of permission, expressed or implied, from the named insured to the driver of the car at the time of the accident, which is clearly lacking in the instant case because leaving the keys was for the restricted purpose of moving the Oliver car should it become necesary to clear the passage into the Cazedessus garage, and since that eventually did not materialize, Michael never had initial permission even to move the car and certainly not to operate it for any other purpose.
For their part, counsel for Western Assurance Company and St. Paul Fire & Marine Insurance Company contend that under the explicit terms of the policy every resident of the household of William J. Oliver, Jr. was as much an insured as was the named insured; that none of these household residents needed the permission of William J. Oliver, Jr. in order to be protected as an insured while operating the vehicle or as a prerequisite for those injured by his negligent operation of the vehicle to recover against the insurer; but even assuming that young Oliver was a “permittee” (which counsel say is the position most favorable to the Fidelity & Casualty Company), the Courts of this State have held consistently that “permission” by a gratuitous bailee or borrower constituted permission under the omnibus clause of the policies under consideration,[5] and it *195 is of no moment that the use to which the vehicle was put was an unforeseen and unauthorized deviation.
We think correct the assertion referred to in the paragraph above that young Oliver, a resident of the same household as the named insured, was himself an insured according to the plain terms of the policy; it follows that the finding of the courts that permission to use the car had been granted to him by his father was without applicability and that he was not a “permittee” within the meaning of the omnibus clause. But this does not profit Western Assurance and St. Paul Fire & Marine because under the express wording of the policies, only the named insured or his spouse occupying the same household may constitute one a permittee and thus afford him coverage. Needless to say, neither Mr. nor Mrs. Oliver granted Michael Cazedessus permission of' any kind. He was therefore not afforded coverage under the clause “any other person using such automobile.” The result sought by counsel for the said insurance companies would do violence to the provisions of the policy, which are clear and unambiguous. The contract is the law between the parties, and we are not authorized under the guise of construction to change it.[6]
But counsel for said companies confidently declare that in other cases we have, either expressly or by denying writs to the Courts of Appeal, so extended the interpretation of “permission of the named instfred” that it applies to anyone who has been given legal control of the car. With this we cannot agree.
One of the cases relied on for the above statement, and cited by both the District Court and the Court of Appeal in this case, is Brooks v. Delta Fire & Casualty Co., 82 So.2d 55, in which we denied writs with the notation, “ * * * The judgment complained of is correct.” That case concerned a permittee, Mrs. Moreau (daughter of the car’s owner), who wished to drive *197 from Baton Rouge to New Orleans and back with her six-week-old baby and asked Miss Dietz to go along to care for the infant; after their return to Baton Rouge but while the car was still being used, because the baby was crying Mrs. Moreau asked Miss Dietz to drive while she quieted the child, and an accident occurred while Miss Dietz was driving. The Court of Appeal, reversing the District Court, held that there was coverage under the omnibus clause, and this was correct — not because Miss Dietz was the permittee of a permit-tee but because she was acting for Mrs. Moreau, who was present and still had direction and control of the car but had turned over the operation of the automobile because of the slight emergency. The situation which occurred there, in view of the circumstances, should have been foreseen by the named insured, and therefore his consent to Miss Dietz’ operation of the car was implied.
Another case which counsel for Western Assurance and St. Paul Fire & Marine place in the same category is Garland v. Audubon Ins. Co., La.App., 119 So.2d 530, in which writs were refused with the notation, “ * * * The decree of the Court of Appeal is correct.” The facts were that when the insurance on the car was secured, Mrs. Bearry and her husband were living separate and apart but without formal decree of separation, and for this reason the insurance agent who issued the policy advised Mrs. Bearry to name her husband as the insured. It appears that it was she who bought the automobile, and even when the couple lived together she allowed her husband little or no control of the car; he purchased another; after the separation had continued for some time and Mrs. Bearry prepared to move, with their children, from Baton Rouge to Arkansas, he helped her pack but made no protest that she was taking the car with her; furthermore, he made payments for the automobile and the insurance in lieu of alimony and support for their two children. When the car was involved'in an accident while being driven by a friend of Mrs. Bearry to whom she customarily loaned the automobile, under the facts, the correct ruling was that the omnibus clause. afforded insurance protection, because the person who granted permission to use the car was fop all intents and purposes the named insured.
Counsel stress language from a number , of cases, opinions of this Court and the Courts of Appeal, to support their asserT tion that the jurisprudence shows a more liberal trend in interpreting the coverage afforded by the omnibus clause, and that this is based on the initial permission concept. We have shown that initial permission was lacking in the instant case, and no useful purpose would be served in attempting to explain what the courts may have said under widely differing factual' situations, in pursuing the logic of the par *199 ticular rule applicable to the matter under discussion.
The Family Automobile Policy further provides, in the same “Part I — Liability,” under “Persons Insured,” that “The following are insureds under Part I: (a) * * * ^ * * * (2) * * * [sub-part (a) (1) and (2) are quoted earlier in this opinion]; (b) With respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relative; * * *.” “A non-owned automobile” according to the Definitions “means an automobile * * * not owned by the named insured or any relative * * The “named insured” in the policies issued by Western Assurance Company and St. Paul Fire & Marine Insurance Company is “Eugene Cazedessus, Jr.” — a “relative” (father) of Michael Cazedessus. Therefore, Michael Cazedessus was a “person insured” under the above quoted Section (b) (2), and those companies are liable for the judgments rendered.
The memorandum filed by plaintiffs seeking an increase in the awards cannot be considered; we granted writs on the application of Fidelity & Casualty Company of New York, but the plaintiffs failed to apply for writs from affirmance of the amount of the awards by the Court of Appeal, and under the well settled jurisprudence, this Court, in reviewing a judgment of the lower court at the instance of one party, will not amend the judgment to the advantage of a party who has sought no remedy. See Speed v. Page, 222 La. 529, 62 So.2d 824, and cases therein cited; Hammond v. Lotz, La.App., 125 So.2d 146.
For the reasons assigned the judgments of the District Court as affirmed by the Court of Appeal, First Circuit, in favor of plaintiffs Julian E. Rogillio and Hazel Morales Rogillio, and of plaintiffs Charles DeLaune and Margie Ruth Lewis DeLaune, and against The Fidelity & Casualty Company of New York, as primary insurer, are annulled and set aside, and as to The Fidelity & Casualty Company of New York the suits are dismissed at the cost of the remaining defendants; in all other respects the said judgments are affirmed.

. Cazedessus was insured under two standard Family Automobile policies, one with the Western Assurance Company and the other with the St. Paul Fire & Marine Insurance Company, each policy affording coverage for bodily injury up to $50,000 for each person and $100,000 for each occurrence.

. Oliver’s insurance was carried by the Fidelity & Casualty Co. of New York, the policy being likewise of the standard Family Automobile type and having *189 limits of liability of $100,000 for each person and $300,000 for each accident, $5,000 for property damage and $2,000 for medical payments.

. The coverage of the Fidelity & Casualty Company policy was sufficient to take care of all awards, which were, for Rogillio, $3,951.28; for Mrs. Rogillio, $500.00; for DeLaune, $2,508.85; and for Mrs. DeLaune, $500.00.

. Fifteen-year-old Michael did not have a driver’s license because his parents refused to let him obtain one, but had experience in driving a car with one or both of his parents present.

. Counsel submit “this is the first case where an appellate court has passed on ‘permission’ under the omnibus clause of the standard family policy now issued by *195 all insurance companies in Louisiana, in public liability contracts. In all prior cases involving an interpretation of ‘permission’ under the omnibus clause, the insured was defined as follows: ‘III. Definition of Insured: With respect to the insurance for bodily injury liability and for property damage liability the unqualified word ‘insured’ includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.’ ”

. Civil Code of La., Art. 1901; Cantu v. Fenner, Beane & Ungerleider, 181 La. 743, 160 So. 399; Moriarty v. Weiss, 193 La. 34, 198 So. 643; Oil Field Supply & Scrap Material Co. v. Gifford Hill & Co., 204 La. 929, 16 So.2d 483; Hunt Trust v. Crowell Land & Mineral Corp., 210 La. 945, 28 So.2d 669; Gordon v. Unity Life Ins. Co., 215 La. 25, 39 So.2d 812; Texas Co. v. State Mineral Board, 216 La. 742, 44 So.2d 841; Stack v. DeSoto Properties, 221 La. 384, 59 So.2d 428; Succession of Jurisich, 224 La. 325, 69 So.2d 361.