REGAN, Judge.
The plaintiffs, Dr. and Mrs. Philip Krupp, Jr., filed this suit against the defendants, Jose Pinto Pinheiro, Jr., Hertz Corporation, Atlantic National Insurance Company of New York, Hertz’s automobile liability insurer, Pan Air Corporation, Pacific Indemnity Corporation, Pan Air’s liability insurer, Continental Casualty Company and Federal Insurance Company, endeavoring to recover the respective sums of $48,900.00 and $32,441.92, representing personal injuries and property damage, which they assert were incurred by them as the result of an intersectional collision, which was caused by the negligence of Pinheiro in the operation of a motor vehicle rented from the Hertz Corporation by the Pan Air Corporation.
Continental Casualty Company and the Federal Insurance Company were dismissed from the suit by virtue of a summary judgment since their policies did not afford coverage herein.
Thereafter, the remaining defendants answered and denied their respective liabilities to the plaintiff.
This case was consolidated with a similar suit arising out of the same accident in order to facilitate and expedite the trial thereof. The suit referred to is entitled Mr. and Mrs. Thomas H. Hayden v. Jose Pinto Pinheiro, Jr., et al. In the Hayden case, the plaintiffs were guest passengers in the Krupp automobile and asserted that they were entitled to the respective sums of $16,750.00 and $10,240.50 for personal injuries incurred by them as the result of the accident.
After a trial on the merits, the lower court rendered judgment in favor of the plaintiffs in the total amount of $20,982.47,[1] and from this judgment the defendants[2] have prosecuted this appeal.
The record reveals that the accident occurred in the intersection of Orleans Avenue and North Hagan Street in the city of New Orleans at approximately 2:20 A.M. on New Year’s Day, January 1, 1959. Dr. Krupp, who was accompanied by his wife, Patricia, and Mr. and Mrs. Hayden, was driving his 1957 Chrysler automobile in the neutral ground lane of Orleans Avenue, the favored street, in the direction of the river at a speed of approximately twenty-five to thirty miles per hour. He had negotiated more than half of the intersection when his vehicle was struck in the area of the right front door by a 1957 Plymouth automobile driven by Pinheiro in Hagan Street in the direction of Orleans Avenue. The Pinheiro automobile skidded approximately twenty-eight feet prior to impact, after which it overturned the Chrysler and caused serious injuries to all of the plaintiffs. It was later learned that Pinheiro failed to obey a stop sign. None of the defendants seriously dispute the fact that the negligence of Pinheiro constituted the proximate cause of the accident. Suffice it to say that the record fully substantiates his unequivocal fault therefor.
The defendant, Pinheiro, was a captain in the Brazilian Air Force, and the record discloses that he was returning from a New Year’s Eve party when the collision occurred. He was a resident of Belem, Brazil, where he was licensed to operate a motor vehicle.
A judgment fixing the ultimate liability of the defendants necessitates a résumé of the factual circumstances under which Pinheiro came into possession of the Plymouth automobile.
In January of 1958, the Brazilian Aeronautical Commission, as a representative of the Brazilian Air Force, entered into a written contract with the defendant, Pan *406 Air Corporation, for the overhaul of eight PBY amphibious airplanes for the price of approximately $750,000.00. The contract required Pan' Air to furnish transportation to a maximum of seven resident inspectors working on behalf of the commission to supervise the renovation of the planes by the defendant, Pan Air. The record discloses, however, that Pan Air was under no contractual obligation to provide transportation for the crews of the various airplanes. We shall discuss this aspect of the case in more detail hereinafter.
During 1958, Pan Air performed its contract at the New Orleans Airport. Each of the eight Brazilian airplanes was ferried from Brazil to New Orleans by a crew consisting of a Brazilian Air Force pilot and four inferior officers. When the renovation of a plane was completed, a similar crew journeyed from Brazil to pick up the plane and fly it home. The crews remained in New Orleans for one or two weeks, and during this period of time they test-flew the overhauled plane in order to discover any operational defects which might exist therein. The record is not clear as to the exact number of crews which arrived in New Orleans.[3] In any event, there were two crews for each plane and it is conceded that there were at least sixteen such crews which arrived here.
The Brazilian crews acquired transportation during their visit to New Orleans by virtue of automobiles rented from the Hertz Corporation through Pohlman Air Craft, the Hertz rental agency at the New Orleans Airport. The rented vehicles were turned over to the senior Brazilian crew members who drove them.
The record discloses that at least two methods were employed to effect the rental of the' Hertz automobiles. On some occasions, an employee of Pan Air Corporation would telephone the Hertz rental agency at the airport and request it to deliver a car to the Pan Air hangar for the use of the Brazilian crew. Hertz would then send the car, and one of the Brazilian officers would sign the rental agreement. According to Albert Bubeck, the general manager of Pan Air, this was the usual practice.
On several other occasions, no one was available at the Hertz rental office to deliver the automobile to the Pan Air hangar. Therefore, a Pan Air employee went to the rental agency to obtain the car for the Brazilian crew. On these occasions, the Pan Air employee was required to sign the rental agreement, and the fee therefor was charged to Pan Air. Since Pan Air was not obligated under its contract to provide-transportation for any of the crews, it charged the cost of the automobile rental to the Brazilian Aeronautical Commission-as “extra work hours” performed under the contract. This procedure was in conformity with instructions received by the Pan Air from the Brazilian commission.
The latter method was used for the rental' of the Plymouth automobile which was being driven by Pinheiro when the accident, occurred. On December 20, 1958, Pan Air was informed that another Brazilian crew would arrive that day. Consequently, Irving Bubeck, the shop superintendent of Pan Air, instructed one of his inspectors,. Robert H. Fergeson, to visit the Hertz rental agency and obtain a car for the Brazilian crew. Fergeson went to the Hertz office, where he signed a rental contract in-the name of Pan Air Corporation and very reluctantly furnished the number of his owrr driver’s license thereon. He was then given possession of the automobile, and he drove it back to his company’s premises.
The automobile was delivered to one of' the resident inspectors of the commission,. Lieutenant Alaor de Raites Silva, who in: turn gave the use of the automobile to Pin-heiro, who, as we have said was involved in this unfortunate accident.
*407 An analysis of the foregoing facts in conformity with the rationale of the existing jurisprudence reveals that no liability for the damages incurred herein exists on the part of the Hertz Corporation. The record is devoid of evidence which would establish any negligence on the part of Hertz, since on this occasion it leased the vehicle to Pan Air through Fergeson, ostensibly a capable driver, who produced a valid driver’s license. As will be discussed in more detail hereinafter, the Hertz employee knew that the automobile subsequently would be entrusted to a member of the Brazilian Air Force. This, however, does not constitute negligence, since an interrogation of Pinheiro by the Hertz employee would have revealed no physical or mental infirmities and would have probably disclosed that he spoke “broken English”, but that he did possess a valid Brazilian driver’s license.[4] We are not inclined to reason, as counsel suggests, that it is negligence per se to rent an automobile to a foreigner who possesses a foreign driver’s license, but who does not fluently speak the English language.
With respect to the negligence vel non of Pan Air Corporation, the plaintiffs argue that Pinheiro was in fact an agent of Pan Air and acted in furtherance of its business by acting as chauffeur for the other crew members. However, the record is also devoid of any evidence indicating that the resident inspectors or Pinheiro were operating the vehicle on behalf of Pan Air. To the contrary, the evidence preponderates to the effect that the automobile was rented solely for the convenience of the Brazilian crews as a courtesy to them, and not as a part of Pan Air’s contractual obligation.
Dr. Krupp testified that Pinheiro made a statement to one of the police officers investigating the accident that he did not stop at the intersection in obedience to the sign because he did not know what the sign meant. It is significant to note that Pinheiro never testified herein and therefore did not possess an opportunity to contradict this assertion, and according to Dr. Krupp, the statement was made in “broken English”. The plaintiffs seize upon Dr. Krupp’s assertion in an endeavor to demonstrate that Pan Air was liable for giving possession of the automobile to one who could not properly read traffic signals without initally ascertaining his ability to properly operate the vehicle. To reiterate what we stated previously concerning the liability of the Hertz Corporation, it would not have been negligent conduct on the part of Pan Air to entrust the vehicle to Pinheiro merely because he spoke faulty English since he was physically capable of driving and he possessed a valid Brazilian driver’s license. Moreover, even assuming arguendo that such conduct was negligent, an additional reason for exculpating Pan Air is the fact that it actually delivered the possession of the vehicle to Silva, the resident inspector who possessed a local driver’s license and who was familiar with the English language.
Pacific Indemnity Company issued to Pan Air Corporation a policy which purports to provide insurance coverage' for the use of their personal automobiles by its officers and employees in connection with the company’s business. Pacific Indemnity Company contends that its policy specifically excludes rented vehicles. In support of this argument, it points to the following clause contained in its policy:
“1. The words ‘non-owned automobile’ shall mean a land motor vehicle, trailer or semitrailer not owned by, registered in the name of, hired by or loaned to the named insured. The word ‘automobile’ wherever used in the policy, with respect to the insurance afforded under this endorsement, shall include ‘non-owned automobile’.” (Emphasis added.)
 It is clear from the evidence appearing in the record that the Hertz auto *408 mobile does not fall within the definition of a “non-owned automobile” as stated in the policy, and it therefore follows that liability cannot be imposed upon Pacific Indemnity as a result of an accident involving an automobile which was rented by Pan Air Corporation, the named insured. The rule has crystalized in Louisiana that when an insurance contract is clear and unambiguous it must be enforced as written.[5]
The final issue posed for our consideration involves the question of the liability of the Atlantic National Insurance Company, the public automobile liability insurer of the Hertz Corporation. Atlantic National contends, of course, that no liability exists with respect to itself because the driver of the automobile was not an insured under the policy. The plaintiffs, on the other hand, point to the definition of the insured under the policy and contend that Pinheiro was the omnibus insured thereunder. The policy provision upon which the liability of Atlantic National turns reads:
“III. Definition of Insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word “insured” includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.”
The plaintiffs insist that Pinheiro falls within the definition of an insured since he was operating the vehicle with the permission of the named insured, Hertz. On the other hand, Atlantic National’s response thereto is that he was merely the permittee of a permittee, and that he therefore did not operate the vehicle with the consent of Hertz.
The jurisprudence is rather well settled to the effect that in order to qualify as an omnibus insured under the above policy provision, the driver of an automobile must be operating it with either the express or implied consent of the named insured.[6] Therefore, the question posed for our consideration in judging the liability of the Atlantic National Insurance Company is whether the Hertz Corporation knew that the automobile was being rented by Pan Air for the use of the Brazilian crew, and if it possessed such knowledge, whether it gave its express or implied consent to such use.
To reiterate, for the purpose of emphasis, the record discloses that on at least sixteen occasions a Hertz vehicle was rented for the benefit of the Brazilians. According to the testimony of Albert Bubeck, general manager of the Pan Air Corporation, the customary procedure was for Hertz to deliver an automobile to the Pan Air premises and obtain the signature of one of the Brazilians on the rental contract. The record, very significantly fails to disclose any evidence contradicting the fact this was the usual practice and that it had been followed on numerous occasions.
On the occasion in question, Robert H. Fergeson, one of Pan Air’s inspectors, visited the Hertz agency himself to obtain the automobile, signing for it in the name of his company and furnishing his own driver’s license number merely for identification purposes. He testified unequivocally that he informed the clerk at the rental agency that the automobile was being rented for the Brazilian crew, and not for the use of his company. Moreover, he explained that he endeavored to resist the clerk’s request that he place his own driver’s license number on the contract, the rea *409 son for this resistance being the fact that the automobile would not be used by him or Pan Air. However, the clerk insisted that someone’s license number had to be inscribed on the contract and he then complied with the request.
When the Hertz agency clerk testified, she did not deny Fergeson’s version of the transaction. She merely asserted that she po'ssesed no independent recollection of the transaction and could only identify her signature on the contract.
Under these factual circumstances, we are compelled to reach the inevitable conclusion that the evidence preponderates to the effect that the Hertz rental agency possessed knowledge of the fact that the automobile involved in this collision was being furnished for the use of the Brazilian Air Force officers. Moreover, the acquiescence of Hertz, together with its prior course of conduct in renting the automobiles directly to the Brazilians, clearly indicates that it impliedly consented to this course of action.
 Counsel for Atlantic National relies upon the rationale emanating from Rogillio v. Cazedessus[7] as authority for the proposition that the permittee of a permittee is not covered as an omnibus insured under a policy of this nature. However, an examination of the Rogillio case together with other cases involving the same point of law[8] clearly discloses that the consent for a third party to operate a vehicle loaned or rented to another can be given either expressly or by implication. Of course, the question of whether such consent was in fact given depends on the individual facts emanating from each case.
Finally, counsel for Atlantic National argues that the rental contract, between Hertz and Pan Air, speaks for itself and that it could not be varied or explained by the parol evidence adduced herein. In addition thereto, he also points out that the rental agreement contained a clause prohibiting the use of the car by any person other than the lessee, his immediate family, employer, or employee. However, it is quite clear that the pertinent contract which forms the subject of this inquiry is the policy of public liability insurance written by Atlantic National. In this case, the rental contract is irrelevant for the reason that the scope of our inquiry is limited to the question of whether or not Pinheiro was operating the vehicle with the express or implied consent of the named insured, the Plertz Corporation. We are convinced that Hertz knew and consented to the use of the various automobiles rented by the Brazilian crews, and its insurer cannot use the rental agreement as a shield in order to avoid liability under the omnibus provisions of the insurance policy.
No serious effort has been exerted on appeal to contest the correctness of the monetary awards given the plaintiffs by the trial court. Our consideration thereof discloses that the amounts awarded were not arbitrary and do not exceed the discretion of the trial judge. Consequently, his decree will not be disturbed on appeal.
For the foregoing reasons, the judgment of the lower court in favor of the plaintiffs against the Hertz Corporation, Pan Air Corporation and Pacific Indemnity Company is hereby reversed. In all other respects, the judgment of the lower court is affirmed.
All costs incurred herein are to be borne by the defendant, Atlantic National Insurance Company of New York.
Reversed in part and affirmed in part.

. Judgment was rendered for Mrs. Hayden in the amount of $3,500.00, Mr. Hayden in the amount of $3,490.50, Mrs. Krupp in the amount of $6,500.00 and Dr. Krupp in the amount of $7,491.97.

. All defendants were east in solido, except Pacific Indemnity Co., wMcli was recognized to be an excess insurer.

. The record reflects that as many as twenty-three crews may have come to New Orleans.

. Soe E..S. 32:417.

. Sumrall v. Aetna Casualty and Surety Company, La.App., 124 So.2d 168 (1960).

. Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734 (1961).

. 127 So.2d 734 (1961).

. Peterson v. Armstrong, La.App., 176 So.2d 453 (1965); Coco v. State Farm Mutual Automobile Insurance Company, La.App., 136 So.2d 288 (1961).