340 So.2d 293 (1976)
Kenneth W. HUGHES
v.
SOUTHEASTERN FIDELITY INSURANCE COMPANY et al.
No. 58018.
Supreme Court of Louisiana.
November 8, 1976.
Donald M. Fendlason, James S. Farmer, Bogalusa, for plaintiff-applicant.
R. Bradley Lewis, Talley, Anthony, Hughes & Knight, Bogalusa, for defendants-respondents.
DIXON, Justice.
Kenneth W. Hughes sued to recover property damage sustained when his automobile was rearended by Green Andrews' Chevrolet, driven by Jimmie Coleman. Southeastern Fidelity Insurance Company was the insurer of the Andrews Chevrolet.
On the day of the accident Green Andrews borrowed Tom Cates' truck in order to go fishing and left his car for the use of Cates. Later that day, while Andrews still had Cates' truck, Cates borrowed Andrews' car. This swapping of vehicles had occurred often and was a common practice between the two men. Neither asked permission of the other. In Andrews' car, Cates and a friend, Jimmie Coleman, visited some bars in the area. Subsequently, Cates permitted Coleman to drive Andrews' car while he and Viola Williams occupied the back seat. While Coleman was driving he ran into the back of the plaintiff's car, disabled on the shoulder of U. S. Highway 90 in St. Charles Parish. The record reveals that Coleman was intoxicated at the time of the accident and that Cates had also been drinking. The plaintiff sued Southeastern Fidelity Insurance Company, Jimmie Coleman and Albert D. Andrews. The trial court rendered judgment for the plaintiff and against the defendant Southeastern Fidelity Insurance Company. The First Circuit Court of Appeal reversed and rendered judgment in favor of the defendant insurance company. Hughes v. Southeastern Fidelity Insurance Co. et al., 329 So.2d 836 (1976). This court granted writs on June 4, 1976 to review the judgment of the Court of Appeal.
The legislature has indicated a strong policy that insurance contracts in Louisiana are executed for the benefit of the injured party and are to provide coverage for all insureds. R.S. 22:655 provides in pertinent part:

*294 "It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy." (Emphasis added).
The specific question to be resolved in this case is whether the omnibus clause of the insurance policy issued in the name of Albert Andrews provided coverage for Jimmie Coleman in the circumstances. The omnibus clause of the policy provides in pertinent part:
"III. Definition of Insured. With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while operating the automobile and any other person or organization legally responsible for the operation thereof, provided the actual operation of the automobile is by the named insured or such spouse or with the permission of either. . . ."
Defendant insurance company admits for the purpose of this litigation that Green Andrews is the named insured under the policy. However, it asserts that Jimmie Coleman was driving the car without the permission of the named insured, was therefore not an insured under the omnibus clause, and hence denies liability. There is no question, and Southeastern does not contend otherwise, that Tom Cates, the first permittee, was covered by the omnibus clause of the policy. The trial court obviously found that Coleman also had implied permission to drive Andrews' automobile.
In American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969), this court analyzed the question of implied permission for the second permittee (Coleman) in terms of whether it was foreseeable that the first permittee (Cates) would allow someone else to drive when the named insured (Andrews) give his permission to the first permittee. In addition, "each case must depend upon the facts and circumstances revealed there." American Home Assurance Co. v. Czarniecki, supra; Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734 (1961).
In utilizing this approach, the facts of the relationship between Andrews and Cates were as follows: the two men had known each other for at least ten years and had worked together for over two years. They often swapped vehicles for running errands or other purposes when Andrews needed a truck or Cates needed a car. Andrews' testimony reveals that no restrictions whatsoever were placed on either man when they borrowed the other's vehicle and Andrews had never told Cates not to allow a third person to drive the car. On this particular occasion the only reason that Cates had Andrews' car was that Andrews was using Cates' truck to go fishing and had left his car for Cates' use. Andrews did not even know when Cates took his car or when he would bring it back. On the basis of these facts we must agree with the opinion of the dissenting judge in the Court of Appeal:
". . . Under these circumstances, the conclusion is inescapable that he (Andrews) gave Cates his car to use as his own, for his own purpose, while he used Cates' truck for his own purpose." (Emphasis added). 329 So.2d 836, at 839.
Since Andrews had given permission to Cates to use the car as his own, the possibility that Cates might allow another to drive the car was clearly foreseeable. See Hurdle v. State Farm Mutual Automobile Insurance Co., 135 So.2d 63 (La.App. 2d Cir. 1961).
Also, the fact of the presence of the first permittee in the vehicle has been considered in similar cases in extending coverage to *295 the second permittee. E. g., Brooks v. Delta Fire & Casualty Co., 82 So.2d 55 (La.App. 1st Cir. 1955); cf. Jones v. Breaux, 289 So.2d 110 (La.1974) (injured party seeking recovery from lessor's insurance company when permittee of lessee is driving the car). Here, Cates, who clearly had permission, was in the car at the time of the accident.
The Court of Appeal relied heavily on the Czarniecki case, supra, which denied coverage to a second permittee in a similar situation. That case is distinguishable, however, for in Czarniecki the named insured had never loaned his car to the first permittee before, no exchange of vehicles took place and the first permittee was not in the car during the use by the second permittee. To the contrary, in the case before us, exchanges took place frequently, and Cates was in the car while Coleman was driving.
Similarly, the case of Johnson v. Aetna Casualty & Surety Co., 274 So.2d 769 (La.App. 3d Cir. 1973), is distinguishable. Also a second permittee case, the Court of Appeal found no implied permission although the first permittee was in the vehicle at the time of the accident. However, there, the named insured (Philip Morris, Inc.) had given the first permittee (its employee) notice of the restriction on the use of his car including the following language: "However, the privilege to drive for personal use is restricted to you and your wife." The court found the use to have been personal rather than for business purposes and the second permittee was not the wife of the first permittee. Consequently, in Johnson the foreseeability test had not been met. Here, Andrews placed no restrictions whatever on the use of the car by Cates.
Accordingly, the judgment of the Court of Appeal is reversed, and the judgment of the trial court is reinstated, at defendant's cost.
TATE, J., assigns additional concurring reasons.
DENNIS, J., dissents.
There was not sufficient proof of implied consent for first permittee to allow drunken driver to operate the vehicle.
TATE, Justice (concurring).
I fully subscribe to the rationale and holding of the majority opinion, accepting (for the time) our decisions in American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969) and Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734 (1961). In substance, these decisions held that, when the insured permits a third person to drive an insured vehicle, the omnibus coverage also extends to operation of the vehicle by a second permittee only if the scope of the permission given to the first permittee includes permission to him to entrust the vehicle to the operation of the second permittee under the facts and circumstances shown.
Nevertheless, I believe that the omnibus insuring clause should be interpreted more broadly, in accord with our pre-Rogillio jurisprudence. We should re-examine the correctness of the limitation by Czarniecki and Rogillio of omnibus coverage only to those second permittees who, after the accident, are discovered to have been within the scope of the original permission.
The omnibus insuring clause insures "any person while operating the [insured] automobile. . ., provided the actual operation of the automobile is . . . with the permission of [the named insured or his spouse]." If the initial permission is so given by the named insured, the actual operation of the automobile is with his permission, whether by the first permittee or instead by a second permittee to whom the first permittee entrusted the use of the vehicle.
Since Parks v. Hall, 189 La. 849, 181 So. 191 (1938), we have liberally construed the "permission" to the first permittee so as to afford coverage under the omnibus clause even when this permittee operates the vehicle in deviation from or contrary to the instructions given him by the insured. Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (1950); Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746 (1949); Stanley v. Cryer, 213 La. 980, 36 So.2d 9 (1948). Prior to our *296 decision in Rogillio, this well-settled and still-valid jurisprudence was reasonably interpreted by our intermediate courts to likewise import the initial permission to a second permittee, for then the actual operation of the vehicle by a third person was "with the [initial] permission" of the named insured. See, e. g., Brooks v. Delta Fire and Casualty Company, 82 So.2d 55 (La.App. 1st Cir. 1955), certiorari denied.
In my opinion, this court in Rogillio incorrectly and unwisely limited this "initial permission" doctrine so as to require some showing of express or implied permission to the first permittee to let the vehicle be also operated by a second permittee.
In the context of 1976 automobile use, the initial permission ordinarily does not involve discussion, at its time, limiting operation to only the first permittee under any and all circumstances. After-the-accident reconstruction of the terms of the initial permission should not deprive of the protection of the policy a person injured by the vehicle or one operating it with the consent of a first permittee empowered with the apparent authority (through its owner-permitted custody) to entrust its operation to this second permittee.
Our direct action statute expressly declares our state's public policy that liability insurance is issued for the protection of an injured person and of additional insureds under the omnibus clause, as well as for the protection of the named insured. La.R.S. 22:655. Accepted principles of construction of insurance policies require interpretations in favor of coverage by those reasonably entitled to it; the insurer itself drafts the language susceptible to the interpretation of coverage, and therefore it can likewise restrict such coverage by express policy provisions to such effect.
Accordingly, in my view, Rogillio and Czarniecki were in error in limiting the omnibus coverage to a second permittee to circumstances where, after the incident, it is proved the second permittee's use was foreseeable by the named insured at the time he gave initial permission for operation of the vehicle by a third person. In terms of the omnibus clause, the "actual operation" of the insured vehicle is "with the permission" of the named insured when he has consented to its use by another and has thus entrusted its custody to another, with the consequent apparent authority (so far as the second permittee is concerned) for that first permittee to permit yet others to drive the vehicle. The initial permission should include within its scope all use of the vehicle by the first permittee consented to by him.