352 So.2d 363 (1977)
Willie WASHINGTON and Helen McGee
v.
DIXIE LEASING OF NEW ORLEANS, INC., Craig Coleman and Liberty Mutual Insurance Company.
No. 8525.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1977.
Rehearing Denied December 13, 1977.
Writ Refused January 30, 1978.
James G. Kambur, New Orleans, David M. Smill, Metairie, for plaintiffs-appellants.
Bruce J. Borrello, Stephen L. Huber, George J. Richaud, Metairie, A. Miles Pratt, III, New Orleans, Denise M. D'Aunoy, George J. Richaud, Metairie, for Liberty Mut. Ins. Co., defendant-appellee.
Before REDMANN, STOULIG and BEER, JJ.
*364 STOULIG, Judge.
Plaintiffs, Willie Washington and Helen McGee, filed suit for personal injuries and property damage incurred when the parked taxicab occupied by Willie Washington was struck by a truck. Named defendants were Craig Coleman, the truck driver; Dixie Leasing of New Orleans, Inc. (Dixie), the owner of the truck; and its liability insurer, Liberty Mutual Insurance Company (Liberty Mutual). The trial court rendered judgment against Craig Coleman in favor of Willie Washington for $2,837 and of Helen McGee, the owner of the vehicle, for $467.50 property damage. Plaintiffs' suit against the other two defendants was dismissed.
Plaintiffs have appealedWashington, individually, for an increase in quantum, and both, to have appellees Dixie and Liberty Mutual cast in judgment along with the presumably less solvent Coleman.
The record does not warrant our increasing the award to Washington. He was treated for neck and back injuries from the date of the accident, July 31, 1974, through October 23, 1974. The duration of symptoms is questionable in view of the fact that the orthopedic surgeon who initially treated him discharged Washington on September 11, 1974. Plaintiff consulted another doctor [1] who treated him from September 25 through October 23, 1974 and expressed the opinion plaintiff had suffered neck and back strain. Viewed in the light most favorable to plaintiff, the special damages he incurred totalled $597 ($297 in medical bills and $300 in lost wages). Plaintiff testified he lost between $200 and $300 in income as the result of this accident; however, his failure to file tax returns and his admission that he understates the number of trips his cab makes daily punctuates the income part of his testimony with questionmarks.
In our view the award of $2,837 is extremely generous and we do not conclude the trial court abused its much discretion in arriving at this figure; therefore, we affirm quantum. C.C. art. 1934(3); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
We next consider whether the trial court erred in dismissing the suit against Dixie and its insurer, Liberty Mutual. On July 30, 1974 Dixie leased the van involved in the accident to one Craig Connor, its employee; however, the rental was independent of his employment. Connor testified he had been told on previous occasions that if he loaned the cars he rented to another party, the insurance afforded by the rental agreement would be nullified. When Connor leased the van he did not inquire whether it would be insured if he loaned it to a third party nor was he specifically told by Dixie personnel what would happen in this event. We are at a loss to understand why Connor assumed the insurance coverage afforded would be different from a rental car as opposed to a rental van.
In the contract of lease, the lessee agrees that liability coverage is contingent on his compliance with the terms of the agreement. One of the restrictions in the contract is that:
"The vehicle described on the reverse side hereof shall not be operated:
* * * * * *
(e) By any person other than the Renter who signed the rental agreement * * *."
Appellant first argues Liberty Mutual and its insured were not entitled to defend on the coverage question because it is an affirmative defense they failed to specially plead. We disagree.
The petition alleges the driver Coleman, was an agent and/or employee of Dixie and on this basis the insurer is liable. Defendants denied this assertion. As it develops, it was the lessee, Connor, not the driver, Coleman, who was an employee and the van was rented to Connor for his personal use. Connor simply loaned the van to Coleman, despite the prohibition in the contract. At *365 the time of the accident Connor was not a passenger in the van, which was being used by Coleman to move some furniture for his mother. Coleman was not on a mission for the lessee or involved with him in a joint venture.
In an action on an insurance contract, plaintiff has the burden of pleading and proving his claim is covered by the policy. Carriere v. Triangle Auto Service, 340 So.2d 665 (La.App. 4th Cir. 1976).
The issue in this case is whether the driver was a named insured under the policy because he was using the car with the permission of the renter. This element of proof concerns basic coverage and must be established by plaintiff as part of his prima facie case. Bagnell v. Travelers Insurance Company, 270 So.2d 255 (La.App. 4th Cir. 1972).[2] By contract the renter stated under which conditions liability insurance coverage applied and plainly disclosed to the lessee that there was no insurance coverage if the car were operated by anyone other than the lessee. This language is not an exclusion. Before the exclusionary provisions have applicability, there must be a named insured to whose actions these may be applied. The question here concerns basic coverage, without which no provision of the contract is applicable.
Appellants argue that public policy considerations require this court to interpret the contract to extend coverage under the omnibus clause. They cite R.S. 22:655 [3] and Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293 (La.1976), to support this proposition. In general terms the statute states insurance policies are issued for the benefit of the injured but this is not a blank check for courts to bring every claim against an insurance company under the omnibus provision of its policy. The case cited is not authority for the proposition appellants urge. Hughes turned on a factual determination that the driver was in fact operating the car with the permission of the named insured. In the instant case the named insured is Dixie and not the lessee Connor. While Connor had permission of the insured to operate the car, the driver Coleman, did not and could not become a permittee (omnibus insured) under the expressed prohibition in the rental agreement. Therefore, the omnibus clause coverage is not applicable.
For the reasons assigned, the judgment appealed from is affirmed at appellants' cost.
AFFIRMED.
REDMANN, J., dissented and filed an opinion.
REDMANN, Judge, dissenting.
The Louisiana law is that one who has an automobile owner's permission "to use the car as his own," has the authority to permit another driver to drive the automobile, and that last driver is deemed to have the owner's permission and is therefore an omnibus insured under the owner's liability insurance policy; Hughes v. Southeastern Fidelity Ins. Co., La.1976, 340 So.2d 293.
The only difference between this case and Hughes, apart from the fact that in Hughes the first permittee was in the car at the time of the accident, is that the apparently unrestricted renting of the vehicle by a *366 commercial car rental agency was intended by the lessor to be restricted. The lessor placed a provision in the two-page rental "INVOICE" (also described, in letters four times smaller, as "standard rental agreement"), a half-line declaration, that the vehicle "shall" not be operated "By any person other than the Renter who signed the rental agreement".
This difference does not amount to a distinction. We have the same problems as Hughes: (1) the "first permittee" could reasonably believe he had authority "to use the car as his own"; more important, (2) the third-party driver could reasonably assume, from the appearance that the lessee could "use the car as his own", that the lessee did have authority to allow him to drive; and (3) the third-party injured person is the intended beneficiary of liability insurance (although he does not "rely" on any appearance of authority or upon any insurance in becoming a tort victim).
The worst result of finding that a third-party driver did not have the owner's permission is that the third-party driver's own insurance may not afford him coverage while driving another car without its owner's permission; American Home Ins. Co. v. Czarniecki, 1969, 255 La. 251, 230 So.2d 253. Thus such a finding deprives both the third party victim and the third party driver of the benefits of insurance. See the additional concurring reasons of Mr. Justice Tate in Hughes, at 340 So.2d 295, suggesting that Czarniecki should be overruled.
Perhaps the most socially acceptable function of the driving-without-permission exclusion is to deny protection to an automobile thief, or to another driver who has no reasonable belief that he may lawfully drive the car. Even this theory seems death-bound in a society which as a rule prefers to spread risk through insurance rather than suffer an innocent victim to bear a loss alone. But, allowing the exclusion of thieves and bad-faith drivers, of what benefit to society is it to exclude as insureds drivers lawfully driving an "insured" automobile when the insurance industry has elected to insure automobiles rather than drivers?
Of what concern to the insurer is the method whereby a given driver lawfully, i. e., not wrongfully, drives an insured automobile, if the owner could have made that driver an "insured" by the simple expedient of permission (which the lawful driver reasonably believes he already has)? How can courts tell automobile accident victims that the insurance on the injury-causing automobile is not available because the automobile owner who freely gave the keys and the killing-power of the insured automobile to a first permittee held some invisible string which, by an ethical restraint not effective against mechanical monsters, disallowed second permittees' driving?
The insurer is liable because the attempted disallowance of second permittees' driving should not be held effective against the third-party second permittee, much less against the innocent third-party victim.
NOTES
[1] This witness was never tendered or accepted as an expert. For this reason his specialty was never disclosed.
[2] The court held in part:

"* * * [l]t is also established by this jurisprudence that the plaintiff has the burden of proving that the driver had the permission of the insured in order for the omnibus clause quoted supra to be effective.
"With equal force, it can be stated that in such circumstances, a special defense of lack of permission need not be pleaded for the defendant to prove lack of permission of the insured to operate such vehicle." 270 So.2d at 259.
[3] R.S. 22:655 in pertinent part provides:

"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tortfeasor within the terms and limits of said policy." (Emphasis added.)