658 So.2d 1310 (1995)
Carolyn Sue PANZICO, as Natural Tutrix of the Minor Child, Jennifer Powell, Plaintiff-Appellant,
v.
Dianne PRICE, et al., Defendants-Appellees.
No. 26232-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
Writ Denied September 29, 1995.
*1311 M. Randall Donald, Monroe, for appellant.
Hayes, Harkey, Smith & Cascio by Charles S. Smith, Monroe, for appellee.
Before MARVIN, LINDSAY, BROWN, WILLIAMS and STEWART, JJ.
BROWN, Judge, On Rehearing.
We granted rehearing in this matter to revisit the issue of whether Danny Knight was covered by the automobile liability insurance policy issued to the parents of Shane Acree. Shane Acree was 16 years old and was allowed to use his step-mother's vehicle on the night of the accident pursuant to a "hopeful admonition" against allowing others to drive. Danny Knight, also 16 years old, was given permission by Shane to use the car to run an errand. The accident arose out of Knight's use of the vehicle. We reverse and render.

DISCUSSION

Insurance Coverage
In Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734 (1961), the Louisiana Supreme Court enunciated the rule regarding second permittees. The policy issued to the owner of the vehicle in Rogillio provided omnibus coverage to "any other person using such automobile, provided the actual use thereof is within the permission of the named insured." The court found that permission of the minor son was insufficient to extend coverage as an omnibus insured to the operator of the vehicle. Permission, either express or implied, had to be given to the operator by the named insured.
The supreme court set forth the standard regarding implied permission in American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969). The court held that if it was reasonably foreseeable that the first permittee would allow others to operate the vehicle, then permission would be implied and omnibus coverage would apply.
American Home Assurance Co., supra, was factually distinguished by the court in Hughes v. Southeastern Fidelity Insurance Co., 340 So.2d 293 (La.1976). In Hughes, the court found coverage under the omnibus clause where the named insured had given his friend unrestricted use of his vehicle. Thus, noted the court, the possibility that the friend would allow another person to drive the vehicle was clearly foreseeable.
In his concurrence in Hughes, Justice Tate wrote that an omnibus clause should be construed as providing coverage whenever initial permission is found. If the named insured has given initial permission, then the actual *1312 operation of the vehicle is within this permission, whether by the first permittee or by a second permittee to whom the first permittee entrusted the use of the vehicle. Hughes, 340 So.2d at 295 (Tate, J., concurring) (Emphasis added).
Justice Tate opined that the court in Rogillio and American Home Assurance Co. erred in limiting the initial permission doctrine by requiring a showing of express or implied permission by the insured to the first permittee for use of the vehicle by a second permittee.
After-the-accident reconstruction of the terms of the initial permission should not deprive of the protection of the policy a person injured by the vehicle or one operating it with the consent of a first permittee empowered with the apparent authority (through its owner-permitted custody) to entrust its operation to this second permittee.
Hughes, supra at 296.
In subsequent second permittee cases, reasonable foreseeability was the test for determining whether there was implied permission and thus omnibus coverage. See Morgan v. Matlack, Inc., 342 So.2d 167 (La.1977); Malmay v. Sizemore, 493 So.2d 620 (La.1986); King v. Louisiana Farm Bureau Insurance Co., 549 So.2d 367 (La.App. 2d Cir.1989), writ denied, 552 So.2d 387 (La.1989); Solice v. State Farm Mutual Automobile Insurance Co., 488 So.2d 1159 (La.App. 2d Cir.1986).
In Perkins v. McDow, 615 So.2d 312 (La. 1993), there was a move toward a broader view of what is reasonably foreseeable. In Perkins, though the named insured had expressly prohibited his adult son from letting others use the car, the court found that it was reasonably foreseeable that the initial permittee would lend the car to another driver. The following is excerpted from the supreme court's opinion in Perkins:
Coverage is extended under the omnibus clause so long as the operator of the vehicle had the named insured's permission to use the vehicle, regardless of whether its use at the time of the accident was within the contemplation of the named insured at the time permission was granted, and even when a deviation is in violation of the specific instructions of the [named] insured.... This liberal initial permission rule was motivated by a desire to not only protect the operator of the automobile from liability but also to protect persons injured by the operator.

Id. at 315. (Emphasis added).
Justice Watson concurred, writing that because of the myriad of problems associated with the permissive use clause, it should be found contrary to public policy. Perkins, 615 So.2d at 317 (Watson, J., concurring).
The Louisiana Supreme Court rendered Norton v. Lewis, 623 So.2d 874 (La.1993), only six months after Perkins, supra. In Norton, the court noted that the word "permission" in an omnibus clause of a liability policy should be construed in its broadest possible sense and that permission, once established, was to be given a wide and liberal meaning in determining coverage. The court then explained:
[T]he narrower "minor deviation" and "conversion" rules followed by some jurisdictions, which make coverage turn on scope of the permission given in the first instance, render coverage uncertain, foster unnecessary litigation, and do not comport with our state's legislative policy of assuring an available fund for the innocent victims of automobile accidents.
Norton, 623 So.2d at 875.
Shane had been given permission to use the vehicle to go on a date. The date, however, was broken and Shane picked up Danny Knight. They "cruised" and eventually met some girls. Knight, who had driven the vehicle in the past, used the car to run an errand.
A parent of a teenager commonly grants the use of a car to the teenager from time to time. As the teenager gains experience, the frequency of use increases. A general *1313 admonition not to let anyone else drive is not, by itself, determinative of omnibus permission coverage. In this instance, the parental instructions given initially warned against allowing someone else to drive, and drinking and imposed a curfew. These instructions were not given each time the car was used. Clearly, discretion was expected and implied.
Applying the principles set forth by the supreme court in Perkins and Norton, we find that Danny Knight was an omnibus insured under the State Farm automobile liability policy issued to the Acrees.

Damages
Based upon our conclusion that Danny Knight was an omnibus insured under the Acree's automobile policy, we must therefore determine the damages sustained by plaintiff, Jennifer Powell.
We initially note that plaintiff settled her claim against Danny Knight, his father and State Farm Fire and Casualty Company, Mr. Knight's homeowner's insurer, for $22,500. It was stipulated that the remaining defendants were entitled to a set-off in this amount against any damage award rendered in excess of the settlement figure.
In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Instead, we set the award in an amount which is just compensation for the damages revealed by the record. Wall v. American Employers Insurance Co., 386 So.2d 79 (La.1980); Whitaker v. Mullinax, 628 So.2d 222 (La.App. 2d Cir.1993); Morris v. Owens-Illinois, Inc., 582 So.2d 1349 (La.App. 2d Cir.1991), writ denied, 588 So.2d 1119 (La.1991).

General Damages
Immediately following the accident, plaintiff, Jennifer Powell, was taken by ambulance to the St. Francis Medical Center emergency room, where she was treated and released. Approximately two months later, plaintiff consulted Dr. Ronald Woods. His initial impression was that plaintiff was suffering from cervical, thoracic or lumbar spine strain. Plaintiff saw Dr. Woods from February 1989 until August 1991 with complaints of back pain. Treatment included anti-inflammatory injections, prescriptions for muscle relaxers and pain medication, and physical therapy. Dr. Woods noted that plaintiff's complaints were fairly consistent over the course of treatment.
Plaintiff was evaluated on two occasions by Dr. J.E. Smith, an orthopedic specialist. In his deposition, Dr. Smith stated that she had either fibrositis or fibromyalgia, which is a non-specific illness characterized by intermittent back pain. Fibromyalgia has an undetermined duration and is frequently precipitated by trauma. Both doctors opined that plaintiff's complaints were consistent with injuries sustained as a result of trauma, though neither would definitively attribute plaintiff's continued complaints of back pain to the accident.
Plaintiff testified that normal activities or increased physical activity can cause her pain, for which she takes ibuprofen or tylenol. According to plaintiff, she has continued her daily routine, which includes working full-time as a dental assistant and attending Northeast on a part-time basis.
There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Estate of Thomas v. State, D.O.T.D., 604 So.2d 617 (La.App.2d 1992), writ denied, 608 So.2d 167 (La.1992). Factors to be considered in assessing quantum for pain and suffering are severity and duration. Glasper v. Henry, 589 So.2d 1173 (La.App. 4th Cir.1991), writ denied, 594 So.2d 1315 (La.1992); Miller v. Winn-Dixie Stores, Inc., 527 So.2d 989 (La. App. 3d Cir.1988), writ denied, 531 So.2d 763 (La.1988).
*1314 We feel that an award of $25,000 in general damages will compensate plaintiff, Jennifer Powell, for her injuries.[1]

Medical Expenses
The record reveals that plaintiff incurred medical expenses in the amount of $5,010.83. This amount is recoverable in full. Thames v. Zerangue, 411 So.2d 17 (La.1982).

CONCLUSION
For the reasons set forth above, we reverse the judgment of the trial court and render judgment against defendants and in favor of plaintiff, Jennifer Powell, in the amount of $7,510.83 ($30,010.83 less set-off in the amount of $22,500.00), together with legal interest from the date of judicial demand. Costs of this appeal are taxed against defendants. REVERSED and RENDERED.
STEWART, J., dissents with reasons.
LINDSAY, J., dissents.
STEWART, Judge, dissenting.
I respectfully dissent from the misapplication of the law in the majority's opinion.
This state's appellate review standard, which is constitutionally based and jurisprudentially driven, is that a court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Accordingly, appellate courts are charged with a duty to affirm the trial court's decision absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
The Louisiana Supreme Court has pronounced a two-part test for the reversal of a fact finder's determinations:
(1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. Also Elliott v. Robinson, 612 So.2d 996 (La.App. 2d Cir.1993). The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart, supra.
The Louisiana Supreme Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). (Citations omitted.)
The majority's opinion is oblivious to the principles of appellate review. The opinion does not in any Judicially acceptable fashion address the reasonableness of the trial court's conclusions. The writer simply draws his own conclusions and ignores the parts of the record which clearly support the conclusions of the trial court.
I agree with the trial court that Perkins v. McDow, 615 So.2d 312 (La.1993) provides the controlling jurisprudence regarding second permittees.
Perkins v. McDow reiterated the jurisprudential rule that to have coverage under an omnibus clause, the driver of a vehicle must *1315 have the permission of the named insured. If the insured has given permission to another driver, the insurance coverage will extend to a third driver only when the insured could reasonable foresee that the first permittee would allow someone else to drive the automobile.
The court held that even when there has been express prohibition against third drivers, it may be reasonably foreseeable that the initial permittee would allow another to use the car. Perkins v. McDow, supra. The context in which the prohibition is made is a necessary ingredient in determining reasonable foreseeability. Perkins v. McDow, supra.
The Perkins court found it reasonably foreseeable that an adult child living in the home, having general and continuing access to a car, would lend it to another driver, although he had been admonished not to let others drive the car. Perkins v. McDow, supra. While, as the court admits, this decision broadens previous decisions dealing with second permittees, it continues to follow the jurisprudential lead of contemplating what is reasonably foreseeable instead of making a blanket determination that if use was granted to one, it is assumed granted to all.
The trial court found that Shane was given permission to use the car on a very restricted basis. He was seldom allowed to use the car (on special occasions at school, maybe once or twice a month). Shane had to have permission from both Dianne and Wayne Acree each time he used the car. He had standing orders not to allow anyone else to drive the car. On the night in question, the use was for a specific purpose, for a limited time, and with instructions not to allow anyone else to drive the car. The court found, as a fact, that it was not reasonably foreseeable by the owners of the car that Shane would allow another person to drive the car on this occasion. The court did not rely on parental admonitions. Instead, it relied on such factors as this was not Shane's automobile, it was not purchased for or intended for his regular use, and he did not have a set of keys to the vehicle. These findings are not clearly wrong are supported by the record, and the majority's opinion fails to show otherwise.
I am not persuaded that the Supreme Court overruled or extended Perkins by its decision in Norton. The Supreme Court is not bashful about stating its position and if the court intended to overrule Perkins or find the permissive use clause contrary to public policy, it could have said so. It did not. Further, Norton was a first permittee, not a second permittee case, and it is therefore not controlling.
Although Justice Watson's concurring comments in Perkins have a great deal of merit, that was not the view of any other Justice. We have no authority to overrule the Supreme Court and, as noted above, the Supreme Court did not overrule Perkins when it decided Norton. The Supreme Court may well overrule Perkins and make our job easier. However, until it does we have a duty to follow and apply the correct jurisprudence.
The majority's opinion does not find: (1) that a reasonable factual basis does not exist for the finding of the trial court; nor (2) that the record establishes that the finding is clearly wrong. Therefore, I can only conclude the majority's reversal of the trial court is based on what they would have done if they were the trier of fact. This is clearly arbitrary, contrary to the law, and a clear abuse of appellate power.
LINDSAY, Judge, dissenting.
I respectfully dissent for the reasons expressed by J. Stewart in his dissenting opinion.
NOTES
[1] For cases involving general damage awards in similar, though more severe circumstances, see Kessler v. Southmark Corporation, 25,941 (La. App. 2d Cir. 09/21/94), 643 So.2d 345 ($75,000); Spurrell v. Ivey, 25,359, 25,360 (La.App. 2d Cir. 01/25/94), 630 So.2d 1378 ($30,000); Partner v. Anderson, 513 So.2d 471 (La.App. 2d Cir.1987) ($45,000); Fontenot v. Boehm, 512 So.2d 1192 (La.App. 1st Cir.1987) ($50,000).