GRISBAUM, Judge.
This appeal relates to a vehicular rental liability claim. Budget Rent A Car (lessor), having been denied recovery by the trial court, seeks $5000 in property damage from Roberta Senner (rental agreement lessee), Senner’s insurer, Liberty Mutual Insurance Company (Liberty Mutual), Karen Johnson (the additional driver listed in the agreement), and Sidney Foster (the driver in fact at the time of the vehicular collision). We annul and reverse.
*1329 ISSUES
We are called upon to resolve three issues:
(1) Whether the lessee in the rental agreement and/or the designated driver are liable, under contract, for damages to the leased vehicle;
(2) Whether the driver in fact is liable in tort for damages to the vehicle; and
(3) Whether the insurer of the lessee of the rental agreement is likewise liable to the lessor as the lessee’s insurer.
FACTS
Plaintiff, David Fontana, filed suit on July 20, 1987, alleging he was owed $5000 by defendants as a result of property damages arising out of an accident in which his school bus was rear-ended by an automobile owned by Sears Budget Rent A Car of New Orleans, Inc. (Budget), rented to Roberta Senner with Karen Johnson listed as an additional driver and driven by Sidney Foster. Also made defendants were various insurers. On September 17, 1987, Lib-, erty Mutual, insurer of Roberta Senner, answered suit, denying most of plaintiffs allegations, and instituted third-party demands against Sidney Foster and Budget. Budget answered the demand as to it on October 1, 1987 and itself made third-party claims against Senner, Johnson, Liberty Mutual, and Foster. Budget answered plaintiff’s petition on October 21, 1987. Senner and Liberty Mutual answered Budget’s demand on November 17, 1987.
On May 26,1988, Budget moved for summary judgment as to plaintiff and third-party plaintiff. A decision was referred to the merits. By consent judgment signed June 13, 1988, Liberty Mutual dismissed its claims against Budget. On October 31, 1988, after trial June 21, the following judgment was signed by the trial court:
This matter came for hearing at trial on June 21, 1988.
PRESENT: DEBRA M. KESLER, Attorney for Plaintiff, David Fontana;
KEVIN T. PHAYER, Attorney for Defendants, Karen Johnson, Roberta Sen-ner and Liberty Mutual Insurance Company;
KEVIN K. GIPSON, Attorney for Defendant and Cross-Claimant, Budget Rent-A-Car of New Orleans, Inc.
After consideration of the facts, law and arguments of counsel, as set out in post[-]trial memrandums [sic];
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of defendants, Karen Johnson, Roberta Senner and Liberty Mutual Insurance Company, dismissing in its entirety the third-party demand of Budget Rent-A-Car of New Orleans, Inc.
The Court finds that Budget is a self-insured under Louisiana Law and is therefore responsible for their own repairs in this case.
A devolutive appeal was granted Budget on November 10, 1988. No answer to this appeal or separate appeal has been filed.
The trial transcript reveals that counsel for Budget reduced its third-party demand to $5000 to conform to the jurisdiction of the court. Various exhibits were entered by stipulation, including the rental agreement. First called by plaintiff was Sidney Foster, III, who states that on October 1, 1986, after taking a friend home, he ran into the rear of plaintiff’s bus. It was raining, and Foster was driving a Budget rental car rented — he says — to Karen Johnson, with whom plaintiff had been living a month and a half to two months prior to the accident. During that time, he had driven Ms. Johnson’s car, which she would leave with him when she went to work in the morning. She never told him he couldn’t use her car. As to the rental car particularly, Foster testifies as follows:
Q. Did Karen Johnson give you permission to drive the car from Budget Rent A Car that was involved in the accident on October 1, 1986?
A. Yes, Ma’am.
Q. Did she tell you in anyway whatsoever that you were not to use the car from Budget Rent A Car?
A. No, ma’am.
Q. Did she make any statement to you that you would not be covered under the insurance?
*1330 A. No, ma’am.
Q. As far as you knew you had full use of the car?
A. Yes, ma’am.
On cross-examination, Foster reveals no one else was in the car he was driving at the time of the accident. Foster accompanied Johnson when she rented the car but signed none of the papers. He concedes that the night before the accident he had been driving with an expired license. On redirect (under the act), Foster says that, during the day prior to the accident, Karen Johnson had been a passenger in the rental car when he was driving it.
Next called by plaintiff, Gene Watson says he went to a concert with Foster and Johnson on October 1, 1986, and Foster drove the Budget rental car. Johnson never said anything concerning Foster not driving and let him use the car after they returned home such that it seemed to Watson that Foster had permission to do so.
Next called on behalf of his case was David Fontana, a school bus driver. He describes the accident as follows:
I was approaching Lapalco and Manhattan where I had to stop to pick up two Brother Martin students. I was in the right lane. About 250 feet before I approached it I put my warning lights on and we started to come to a stop. At the time the light at the intersection was red. I put my signs out, opened the door, picked up the students. Right as they was approaching the bus right before they got on the car slammed into the back of me.
It will cost $1607.04 to repair the bus plus some $800 in loss of time.
In lieu of testimony by the responding police officer, counsel stipulate, the police report is to be received into evidence.
Next called by plaintiff as an adverse party was Karen Johnson, who corroborates that she was living with Foster at the time of the accident. The keys to the rental car lay atop her stereo when Foster took them, she says. She says she did not tell him that he could not use the car the day of the accident but neither did she say that he could. Inasmuch as they had planned to fill the car with gas and return it the day of the accident, she assumed he was taking the car to get gas, yelled for him to wait for her, but did not physically try to stop his taking it.
On cross-examination, Johnson says she had rented the car to go to a September 27 concert in Lafayette. Her mother also signed the contract because she had the requisite credit card. Johnson read the rental agreement before she signed it. She corroborates that Foster accompanied them when the car was rented but signed none of the papers. She did not know his driver's license had expired. Asked again as to her plans for the day and how Foster gained access to the car, Johnson explains:
We were going to clean the vehicle up, gas it up, and return the vehicle. At that time we had also made plans to go and get him his driver’s license renewed. That’s when I learned his driver’s license was expired.
Q. And explain again to the Court how he got possesion [sic] of this vehicle?
A. On that day, I don’t remember exactly, I was on the telephone, I was on the telephone having a conversation with someone. Sidney said he was leaving. I told him to wait for me. He picked up the car keys and left.
Q. And as I understand it, you assumed that he was going to get gas?
A. Right. I lived one block from the ' gas station and I assumed that’s where he was going and that he would return right after that.
Upon further direct examination, Johnson explains she was on the telephone when Foster took the car. She asked him to wait, but he took the keys and left. He did not return that evening, and she heard nothing of his whereabouts until, about 3 a.m., a Jefferson Parish Sheriff’s Deputy knocked on her door and, when she answered, asked whether she knew Foster, who had been cited for driving without taillights and without a valid license.
Upon redirect examination, Johnson says she and Foster had planned to run the *1331 various errands together. She concedes that Foster had driven back from the concert with her in the car.
Next called by plaintiff as an adverse party was Ms. Roberta Senner, who signed the rental contract along with her daughter because she possessed a credit car. She knew Foster was “staying” with her daughter but did not know that he was “living there,” she says. He was present when Johnson rented the car.
On cross-examination, Ms. Senner says she read the rental agreement before signing it. She did not know that Foster’s driver’s license had expired. She reports she called Budget after she discovered Foster had taken the car and told someone there that she had not authorized him to take the car. After she found out about the accident, she called Budget again to report same.
On cross-examination, Ms. Senner reiterates that she never gave permission to Foster to drive the rental car. On redirect, she says she does not know whether Ms. Johnson let Foster drive the car.
ANALYSIS
Prior to addressing the specific issues, we note the trial court’s judgment states that “The Court finds that Budget is a self-insured under Louisiana Law and is therefore responsible for their own repairs in this case.” We are compelled to find that while the factual premise that Budget is self-insured appears undisputed, the legal conclusion derived by the trial court assuredly is. The Louisiana Supreme Court in Johnson v. St. Paul Mercury Ins. Co., 256 La. 289, 236 So.2d 216, 221 (La. 1970) (overruled as to conflicts rationale in Jagers v. Royal Indemnity Co., 276 So.2d 309, 311-12 (La.1973)), has clearly observed that “A policy of insurance protects against claims legally asserted but does not itself produce liability.” (Citation omitted.) This concept would seem self-explanatory: by insuring oneself, one does not thereby assume primary liability for damages sustained through the fault of others. Thus, the trial court has put forward a non sequi-tur in lieu of any rationale for dismissing Budget’s third-party claims. The record being sufficient, we now proceed to the merits.
ISSUE ONE
In order to ascertain liability as to the contractants, we must first view the terms of the rental agreement itself. The provisions pertinent to liability or insurance coverage are as follows:
2. The following restrictions are cumulative and each shall apply to every use, operation or driving of vehicle. Under no circumstances shall vehicle be used, operated or driven by any person:
(a) For the transportation of persons or property for hire; or
(b) Who has given BUDGET/SEARS a false name, age or address; or
(c) In any race, speed test or contest or for any illegal purpose; or
(d) To propel, push or tow any vehicle or trailer; or
(e) While under the influence of intoxicants or narcotics; or
(f) Where the odometer of vehicle has been tampered with or disconnected; or
(g) By any person other than (1) the Renter who signed this agreement, or (2) any additional driver who signed this agreement.
3. Renter will pay BUDGET/SEARS on demand all charges including, but not limited to, for time, mileage (as determined by factory installed odometer) mínimums, service, Damage Waiver, applicable taxes, or other charges entered on the reverse side hereof. Renter is responsible, and will reimburse BUDGET/SEARS upon demand, for all loss or damage whatsoever (and regardless of negligence to vehicle, its equipment and tools[) ]. If Renter has directed the billing for charges to another person or company, and upon being billed they shall fail to make payment, Renter will upon demand by BUDGET/SEARS, promptly pay said charges.
[[Image here]]
7. BUDGET/SEARS agrees to provide the renter, and additional driver, liability *1332 coverage within limits of liability equal to the minimum limits required by the compulsory motor vehicle liability security law, (or so called ‘financial responsibility law’) of the state in which the vehicle is rented. As a condition for this coverage, Renter and driver agree to comply with, and be bound by, all terms, conditions, limitations, and restrictions related to said coverage, and deliver to BUDGET/SEARS every process, pleading or paper of any kind relating to any claim, suit or proceeding received by Renter or driver in connection with any accident or occurrence. Said coverage further requires that Renter and driver shall not aid or abet the assertion of any claim, and shall cooperate with BUDGET/SEARS and insurer in the investigation and defense of any claim or suit. In states where permitted by law or regulation (and to the extent so permitted) the liability coverage described above may be afforded, subject to the same terms, conditions, restrictions and limitations herein-described, under a bond or self-insurance arrangement in lieu of, or in combination with, an automobile liability insurance policy.
The insurance coverage referred to in this paragraph 7 does not apply:
(a) To damages caused to any person, including Renter and driver, by an uninsured motorist or uninsured motor vehicle, or for medical expenses incurred by persons sustaining injuries while riding in or on, entering or leaving, the rented vehicle; or
(b) To any obligation for which Renter or the driver of vehicle, or any insurance carrier as his insurer, may be held liable under any worker’s compensation, unemployment compensation, or disability benefits law, or any similar law; or
(c) To any liability assumed by Renter or by any driver of vehicle under any contract of whatsoever nature; or
(d) To damage or destruction of property owned by, rented to, in charge of, or transported by, Renter or the driver; or
(e)While said vehicle is used, driven or operated in violation of the provisions of paragraph 2(a), (b), (c), (d), (e), (f), or (g), hereof.
This paragraph 7 constitutes the entire agreement between BUDGET/SEARS and the Renter and driver regarding the terms and conditions of the insurance provided by BUDGET/SEARS to the Renter and driver and no alteration thereof shall be valid unless agreed to by BUDGET/SEARS, in writing. If any provisions of this paragraph shall be found to be unlawful, unenforceable, or contrary to public policy, then that portion of this paragraph which is unlawful, or unenforceable, or contrary to public policy shall be modified to provide the minimum amount of insurance coverage necessary to comply with the law or public policy, and the remainder of this paragraph shall remain in full force and effect.
These provisions appear on the back of the contract. On the front, above the lessee’s (i.e., renter’s) signature line, appears the following statement:
USE OF RENTED VEHICLE BY DRIVER OTHER THAN ONE SPECIFICALLY QUALIFIED AND IDENTIFIED ON THIS CONTRACT WILL CANCEL AND TERMINATE INSURANCE COVERAGE; AND IN THE EVENT OF DAMAGE TO RENTED VEHICLE, OTHER PERSONS, OR PROPERTY, THE RENTER WILL BECOME LIABLE TO BUDGET/SEARS RENT A CAR FOR ALL COST, EXPENSES, CLAIMS, LOSSES AND ATTORNEY’S FEES.
Reading all these contractual provisions together, we conclude that the rental agreement in unambiguous terms purports to withhold any insurance coverage from a driver of the vehicle not listed in the rental contract, and in the absence of such insurance, the renter-lessee assumes responsibility for loss or damage to the vehicle. We must now inquire whether such a result harmonizes with our jurisprudence.
*1333 LAW
The pertinent jurisprudence is succinctly discussed by McKenzie and Johnson in 15 Louisiana Civil Law Treatise § 57 as follows:
§ 57. Permittees — Rental Agreements
Prior to Jones v. Breaux,[3] the courts generally looked to the terms of vehicle lease agreements to determine who had permission to operate the leased vehicle. In Jones, an auto leased to Francis, and in which he was a passenger, was being operated by Breaux at the time of the accident. The lease agreement prohibited use except by the lessee or others named in the agreement. Breaux was not named in the policy, and because of plaintiffs concession that she had no coverage, the court pretermitted any consideration of her coverage. The issue, however, was whether there was coverage for Francis. The policy included coverage for “any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.” The court found coverage on several grounds. First, without adequate explanation, the court found that the rental agreement altered the terms of the insurance contract without being attached thereto in accordance with the requirements of LSA-R.S. 22:624 and LSA-R.S. 22:628. Second, the court found the rental agreement ambiguous by implying that it was providing a liability policy for the lessee when in fact the policy was in the name of the lessor with restrictive coverage for the lessee. Finally, the court concluded that Francis was covered because at the time of the accident, he was present in and using the automobile, and he was legally responsible for its use. The court stated:
Where the rule is invoked that a per-mittee may not allow a third party to “use” the named insured’s car, it has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permit-tee at the time of the accident, or (2) the second permittee, using the vehicle, is serving some purpose of the original permittee. It is reasoned that the second permittee is “operating” the car for the “use” of the first per-mittee and that such “use” is within the coverage of the omnibus clause. It is generally held that operation by a third person under such circumstances falls within the protection of the omnibus clause even where such operation is specifically forbidden by the named insured.
The court expressly overruled Normand v. Hertz Corp.,[8] which enforced the provisions of such lease agreement. Jones was a four to three decision. The three dissenting justices suggested that there was no coverage because the driver was not authorized by the rental agreement to operate the vehicle. They found that the rental agreement was not in conflict with the policy; it simply spelled out who had permission of the named insured within the meaning of the omnibus clause.
Shortly after Jones, the Supreme Court denied writs on a Fourth Circuit decision which -indicated that the determinative issue in cases involving rental agreements was whether the operator had the permission of the lessor. In Lauer v. Dickinson,[9] a leased automobile was being operated by the minor son of the lessee who was on a personal mission at the time of the accident. The rental agreement, which was similar to that in Jones, expressly excluded drivers under twenty-one years of age. The court concluded that the policy provided coverage to the rental agency and anyone to whom it granted permission. While the father had the permission of the rental agency, the son did not. There was no coverage for the son or even for the father’s vicarious liability.
On the other hand, the rental agreement in Lunda v. Saur[11] contained a similar specific prohibition against operation of the vehicle by anyone under the age of twenty-one. At the time of the *1334 accident, the leased vehicle was being operated by the lessee’s employee who was under twenty-one years of age. Relying on Jones, the court found coverage because the vehicle was being operated for the benefit of the lessee/employer at the time of the accident.
The jurisprudence with respect to permission under lease agreements cannot be reconciled except on the superficial ground that specific prohibitions in the lease agreement will not be enforced when the lessee remains in the vehicle or the use of the vehicle is for the benefit of the lessee. In absence of statutory regulation of automobile lease agreements or evidence that either the lease agreement or insurance policy was ambiguous or evidence of misleading conduct on the part of the lessor, there does not appear to be any basis for judicial disregard of the unambiguous language of the contracts.
Id., pp. 141-44 (some footnotes omitted).
Since Lauer, supra, the appellate courts seem to have preferred the scope-of-permission approach where the named lessee was not a passenger in the leased vehicle, see Washington v. Dixie Leasing of New Orleans, Inc., 352 So.2d 363 (La.App. 4th Cir.1977), writ denied, 354 So.2d 210 (La.1978), and to prefer to omnibus-insured analysis where the named lessee was a passenger in the leased vehicle, see Grady v. Allstate Ins. Co., 355 So.2d 1070 (La.App. 4th Cir.1978).
Approaching the problem of the rental permittee for the first time, we feel the scope-of-permission inquiry represents the better approach, there reasonably having to be permission on the part of the lessor-insured before one- inquires into the scope of his insurance coverage. Such an emphasis harmonizes with the approach taken by the Louisiana jurisprudence concerning scope of permission where, no lessor-insured being present, only the owner’s insurance coverage is at issue. See, e.g., Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293 (La.1976).
Applying, then, this jurisprudence to our facts, we have a third-party driver who, unaccompanied by any named lessee or driver and on no apparent mission in favor of either — neither signatory to the contract even knew where he had gone with the vehicle — , took the leased automobile for his own purposes and, some hours later, became involved in an accident. Foster may have had Johnson’s authorization to drive the vehicle or may have possessed implied authority to do so premised on his having driven while accompanied by Johnson. At any rate, the lessor-insurer, insofar as the record reveals, neither possessed any notice that Foster, who never signed the rental contract, would be driving the automobile nor in any manner consented to his doing so. In short, although our facts may demonstrate permission vis-a-vis Johnson and Foster, they demonstrate no permission of any kind on the part of Budget vis-a-vis Johnson nor any vicarious use of the vehicle by Johnson through the faculty of Foster.
Given these facts and given the contractual provisions, it appears clear that, as in Lauer, no recovery as to the lessor’s insurer (here, the lessor itself) can be had in the absence of proof of the lessor’s having given its permission for the third party to drive the vehicle or proof that it was being indirectly operated by the named driver or the lessee. Ergo, there being no insurance coverage available, the lessee is answerable to Budget for the damage done to the vehicle in accord with the rental agreement. As to the additional driver, Johnson, however, we see no basis to hold her liable, she being charged with no discernible duty under the rental agreement.[1]
*1335 ISSUE TWO
Foster’s liability is that of a simple tortfeasor since he was not privy to the rental agreement. La.C.C. art. 2315, in part, states, “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Here, it was shown that Foster crashed into the back of a school bus stopped at an intersection with a red traffic signal and that the bus had its stop signs out preparatory to picking up students. Foster himself conceded responsibility for the damage to the bus through his testimony. Given these facts, it is clear Foster breached duties of care[2] that encompassed the particular risk and in fact caused the accident. Ergo, he is liable for the resultant damage.
ISSUE THREE
Finally, as to Budget’s third-party demand against Liberty Mutual, our review of the record has failed to disclose any copy of the insurance policy upon which Liberty Mutual’s liability must be premised. Ergo, we cannot decide the question.
For the reasons assigned, the judgment of the trial court is annulled and reversed in that Roberta Senner and Sidney Foster are liable to Budget Rent A Car for $5000 in property damage to the rented vehicle. All costs of this appeal are to be assessed against the appellees.
ANNULLED AND REVERSED.

 289 So.2d 110 (La.1974).

 254 La. 1075, 229 So.2d 104 (1969).

 299 So.2d 525 (La.App. 4th Cir.1974), writ denied 302 So.2d 36 (1974).

 389 So.2d 915 (La.App. 4th Cir.1980).

. The issue not having been raised, we make no determination as to any liability vis-a-vis Senner and Johnson.

. Examples of such duties may be found in La.R.S. 32:80(A)(1), which states,
The driver of a vehicle upon a highway meeting or overtaking from any direction any school bus that has stopped for the purpose of receiving or discharging any school children shall stop the vehicle not less than thirty feet from the school bus before reaching such school bus when there are in operation on said school bus visual signals as required by R.S. 32:318, and said driver shall not proceed until such bus resumes motion or the visual signals are no longer activated.
and in Baach v. Clark, 442 So.2d 514, 517 (La.App. 5th Cir.1983), writ denied, 447 So.2d 1067 (La.1984), where a panel of this Court observed, “when a rear end collision occurs, the driver of the following vehicle is generally presumed to be negligent. He will only be exonerated where he can reasonably explain the cause of his running into the vehicle ahead.” (Citations omitted.) Here, Foster offered no explanation for his failure to stop behind the school bus and offered no excuse for the rear end collision.