679 So.2d 129 (1996)
Frank MAHAFFEY, Plaintiff-Appellant-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendant-Appellee-Appellant.
No. 95-641.
Court of Appeal of Louisiana, Third Circuit.
February 28, 1996.
Rehearing Denied May 30, 1996.
Writ Denied October 11, 1996.
*130 Steven William Hale, Lake Charles, for Frank Mahaffey.
Robert Samuel Dampf, Lake Charles, for State Farm Mutual Insurance Company, et al.
Byron Andrew Richie, Charles Vernon Richie, Shreveport, for Midland Risk Insurance Company.
Before KNOLL, THIBODEAUX, COOKS, SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.

FACTS
On November 12, 1992, Charles Carr was self-employed as the sole proprietor of his business, National Amusements. The company operates video poker machines, pool tables, juke boxes and cigarette vending machines. Mr. Carr employed Buddy Dale Fuselier as a service technician. As part of his compensation package, Mr. Carr furnished Buddy Dale Fuselier with a vehicle for his business and personal use. Mr. Fuselier's working hours were from 9:00 a.m. until 5:00 p.m., in addition to being on call 24-hours of every 48-hour period.
Buddy Dale Fuselier had an ongoing romantic relationship with Stephanie Alexander. On November 12, 1992, he called Stephanie Alexander from the Fifth Quarter Bar and asked her to meet him. She acceded and the two subsequently retired to the Pelican Motel. Fatigued and intoxicated, Fuselier passed out while in the motel room.
Around 2:00 a.m. Ms. Alexander arose from the bed and retrieved Mr. Fuselier's keys to his Geo Metro and drove in search of something to eat. Ms. Alexander testified that she did not wish to awaken Mr. Fuselier because of his fatigued and intoxicated condition.
Finding no restaurants open, Ms. Alexander headed for her friend's house in Vinton. Along the way, she met Frank Mahaffey who agreed to ride with her. After visiting some friends, Ms. Alexander and Mr. Mahaffey traveled eastbound on U.S. Highway 90 in Calcasieu Parish, when the defendant, Stephanie Alexander, ran off the roadway and struck a tree, injuring Frank Mahaffey, plaintiff in these proceedings. The accident caused serious neck injuries to Mr. Mahaffey, ultimately requiring the removal of a disc from his neck.
This action was brought by guest passenger, Frank Mahaffey, following the accident. Named defendants include State Farm Mutual Automobile Insurance Company (hereinafter State Farm), the vehicle's insurer; Charles Carr d/b/a, National Amusements, Fuselier's employer and named insured of the 1992 Geo Metro involved in the accident; Midland Risk Insurance Company (hereinafter Midland), insurer of Stephanie Alexander, as omnibus insured under her mother's policy; and Stephanie Alexander the driver of the car.
The parties stipulated to the foregoing facts, leaving as the only material fact whether or not defendant, Stephanie Alexander, had permission, either express or implied, to operate the 1992 Geo Metro on the night of the accident.
This matter came to trial in the 14th Judicial District Court in Calcasieu Parish, solely on the permissive use issue. In a partial judgment signed by the trial court March 14, 1995, the trial court ruled in favor of Mahaffey and against defendant Midland, but dismissed Mahaffey's claims as to State Farm. The trial judge found that Ms. Alexander did not have permission to drive the Geo Metro and therefore was not covered under Fuselier's employer's State Farm insurance policy. The trial court did, however, find that defendant, Stephanie Alexander, "had reasonable belief that she was entitled to do what she did" and was therefore covered by her mother's liability policy with Midland.
Mahaffey appeals the partial judgment denying his claim against State Farm, while Midland appeals the trial court's finding of coverage on its part.

MIDLAND'S APPEAL
Midland's appeal is based on the language in its liability policy. The language in its policy states:
A. We do not provide liability coverage for any person: ...

*131 8. Using a vehicle without a reasonable belief that that person is entitled to do so.

. . . .
Ultimately, we agree that the trial judge was correct in finding that Ms. Alexander had a reasonable belief that she was entitled to use the Geo Metro on the night in question. Ms. Alexander had just shared an intimate encounter in a motel room with a man whom she had been dating for several months, became hungry, and thought it reasonable to use Mr. Fuselier's car to try and find something to eat.
Defendant, Midland, would label Ms. Alexander as a thief, but there is nothing in the record that supports this contention. To the contrary, the record supports Ms. Alexander's explanation that she did not awaken Mr. Fuselier because he was fatigued and intoxicated.
Consequently, having reviewed the record, we find no manifest error with the trial court's decision. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). Ms. Alexander attained the reasonable belief necessary under the Midland policy.

MAHAFFEY'S APPEAL
Turning to Mahaffey's appeal, the sole issue is whether the driver, Stephanie Alexander, had legal permission from the owner, Charles Carr, to operate the Geo Metro on November 12, 1992, and therefore covered under the State Farm policy.
State Farm's insurance policy issued to Charles Carr, the owner, defines an insured as follows:
Who is an insured ...
When we refer to your car, a newly acquired car or a temporary substitute car, insured means: ...
4. Any other person while using such a car if its use is within the scope of consent of you or your spouse; and ...
In order for Mr. Mahaffey to succeed in establishing coverage under State Farm's policy, he must prove that Stephanie Alexander was permitted to drive the vehicle. This permission from the named insured may be implied, depending on the facts and circumstances of the particular case. The question of whether the vehicle's use was permitted is answered by determining whether it was reasonably foreseeable that the first permittee would allow someone else to drive the automobile. Perkins v. McDow, 615 So.2d 312 (La.1993); American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (La.1969). Therefore, we must answer the question of whether it was reasonably foreseeable that Buddy Dale Fuselier would allow someone else to drive the automobile owned by Charles Carr d/b/a National Amusements.
Where the named insured gives permission to another to use the car as his own, the possibility that the permittee might allow another to drive the automobile is clearly foreseeable. Hughes v. Southeastern Fidelity Insurance Company, 340 So.2d 293 (La.1976). A review of the record leads us to conclude that Charles Carr could reasonably foresee that Buddy Dale Fuselier, the first permittee, would allow a second permittee, Stephanie Alexander, to drive the automobile. While there is testimony to suggest that Carr told his employee that no one else was supposed to drive the car, it is well noted that admonition by the named insured to a permittee not to let anyone else drive the car is not, by itself, determinative of whether the use of the car by someone else is within the omnibus coverage of the policy, that is, with the implied permission or consent of the named insured. The admonition must be viewed in the context in which it was given, particularly considering the relationship of the named insured with the initial permittee and the relationship of the permittee to the car. Perkins v. McDow, 615 So.2d 312. Mr. Carr had met Stephanie Alexander with Buddy Dale Fuselier before the accident in question and knew that they had a personal ongoing relationship. Therefore, it was clearly foreseeable that Mr. Fuselier would allow or share his vehicle with Ms. Alexander. For an employer not to foresee the possibility that an employee's intimate "significant other," *132 may occasionally drive the company car to the store or on an errand is clearly unrealistic.
It is noted that the restriction by Mr. Carr was merely communicated orally. We agree with the Perkins court that when there is a general, broad admonition not to let anyone else drive the car, it is reasonably foreseeable that on occasion for a variety of reasons under a variety of circumstances, the permittee would allow someone else to drive the car. We feel that such circumstances are present in this instance. Even when there has been express prohibition against third drivers, it may be reasonably foreseeable that the initial permittee would allow another to use the car. The context in which the prohibition is made is a necessary ingredient in determining reasonable foreseeability. Perkins v. McDow, 615 So.2d 312; Panzico v. Price, 26,232 (La.App. 2 Cir.10/26/94), 647 So.2d 1154.
The Perkins court found it reasonably foreseeable that an adult child living in the home, having general and continuing access to a car, would lend it to another driver, although he had been admonished not to let others drive the car. Perkins v. McDow. We agree with the court in Perkins that the issue of coverage is subject to a reasonable foreseeability test. When applying such a test, we must look at all factors involved. These factors must include the fact that Mr. Carr had met Stephanie Alexander with Buddy Dale Fuselier before the accident in question and knew that they had an ongoing personal relationship. Mr. Carr also simply orally communicated this restriction and did not bother putting such restriction in writing. We therefore find that Mr. Carr should have foreseen that Ms. Alexander would conceivably drive the 1992 Geo Metro.
We now turn our attention to answering the question of whether Ms. Alexander had implied permission to drive the 1992 Geo Metro on November 12, 1992. From the record, it is clear that Mr. Fuselier had let Ms. Alexander drive the vehicle prior to the November 12 accident,[1] and the record clearly shows that Ms. Alexander has subsequently used the vehicles of National Amusements with the consent of owner Charles Carr.
While not necessary to the conclusion, we note with approval Justice Tates' concurring opinion in Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293, 295 (La.1976). There, Justice Tate reasoned that:
Nevertheless, I believe that the omnibus insuring clause should be interpreted more broadly, in accord with our pre-Rogillio [v. Cazedessus, 241 La. 186, 127 So.2d 734] [(1961)], jurisprudence. We should re-examine the correctness of the limitation by Czarniecki and Rogillio of omnibus coverage only to those second permittees who, after the accident, are discovered to have been within the scope of the original permission.
The omnibus insuring clause insures "any person while operating the (insured) automobile ..., provided the actual operation of the automobile is ... with the permission of (the named insured or his spouse)." If the initial permission is so given by the named insured, the actual operation of the automobile is with his permission, whether by the first permittee or instead by a second permittee to whom the first permittee entrusted the use of the vehicle.
Since Parks v. Hall, 189 La. 849, 181 So. 191 (1938), we have liberally construed the "permission" to the first permittee so as to afford coverage under the omnibus clause even when this permittee operates the vehicle in deviation from or contrary to the instructions given him by the insured. Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (1950); Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746 (1949); Stanley v. Cryer, 213 La. 980, 36 So.2d 9 (1948). Prior to our decision in Rogillio, this well-settled and still-valid jurisprudence was reasonably interpreted by our intermediate courts to likewise import the initial permission to a second permittee, for then the actual operation of the vehicle by a third *133 person was "with the (initial) permission" of the named insured. See, e.g., Brooks v. Delta Fire and Casualty Company, 82 So.2d 55 (La.App. 1st Cir.1955), certiorari denied.

In my opinion, this court in Rogillio incorrectly and unwisely limited this "initial permission" doctrine so as to require some showing of express or implied permission to the first permittee to let the vehicle be also operated by a second permittee.
In the context of 1976 automobile use, the initial permission ordinarily does not involve discussion, at its time, limiting operation to only the first permittee under any and all circumstances. After-the-accident reconstruction of the terms of the initial permission should not deprive of the protection of the policy a person injured by the vehicle or one operating it with the consent of a first permittee empowered with the apparent authority (through its owner-permitted custody) to entrust its operation to this second permittee.
Our direct action statute expressly declares our state's public policy that liability insurance is issued for the protection of an injured person and of additional insureds under the omnibus clause, as well as for the protection of the named insured. La. R.S. 22:655. Accepted principles of construction of insurance policies require interpretations in favor of coverage by those reasonably entitled to it; the insurer itself drafts the language susceptible to the interpretation of coverage, and therefore it can likewise restrict such coverage by express policy provisions to such effect.
Accordingly, in my view, Rogillio and Czarniecki were in error in limiting the omnibus coverage to a second permittee to circumstances where, after the incident, it is proved the second permittee's use was foreseeable by the named insured at the time he gave initial permission for operation of the vehicle by a third person. In terms of the omnibus clause, the "actual operation" of the insured vehicle is "with the permission" of the named insured when he has consented to its use by another and has thus entrusted its custody to another, with the consequent apparent authority (so far as the second permittee is concerned) for that first permittee to permit yet others to drive the vehicle. The initial permission should include within its scope all use of the vehicle by the first permittee consented to by him.
We also agree with Justice Watson's concurring opinion in Perkins v. McDow 615 So.2d 312, 317:
These cases serve to point out the mischief caused by permissive user provisions of automobile liability policies. The solution would be to hold that the permissive use clause is contrary to public policy.

CONCLUSION
For the foregoing reasons, we affirm the ruling of the trial court as to Midland's coverage of Stephanie Alexander, but find that the trial court erred in finding that Stephanie Alexander did not have implied permission to use the 1992 Geo Metro on the night of November 12, 1992. We therefore reverse the trial court's denial of coverage under the State Farm's policy. All costs of these proceedings are cast to defendants.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
KNOLL, J., concurs in part and dissents in part and assigns reasons.
WOODARD, J., concurs in part and dissents in part for the reasons assigned by KNOLL, J.
KNOLL, Judge, concurring in part and dissenting in part.
This appeal requires the analysis of two different automobile insurance liability provisions that address questions of coverage for a second-permittee driver of a vehicle.
In the first instance, the trial court found coverage under the language of Midland Risk Insurance Company's (Midland) policy because Alexander, the second permittee, reasonably believed that she was entitled to use the automobile on the night in question. I agree with the majority's decision to affirm the trial court's resolution of liability coverage adverse to Midland. The trial court *134 distinguished the policy language of the Midland policy and it is clear that it found that a more relaxed standard existed. Applying the facts of the case to the Midland policy provision, I cannot say that the trial court was manifestly erroneous in finding coverage under the policy.
In the second instance, with regard to the State Farm Mutual Automobile Insurance Company (State Farm) policy, the trial court concluded that under the policy language Alexander did not have permission to drive the automobile and thus, coverage was not provided. I disagree with the majority's reversal of the trial court's finding that there was no coverage provided under the State Farm policy.
This case is laced with credibility determinations and factual contradictions that required resolution by the trial court. Carr, the owner of the vehicle, stated that he told his employee, Fuselier, that no one else was to drive the car; one of his reasons for this rule was that repair tools used in his business were stored in the vehicle for Fuselier's use since he was an on-call employee every other day. The record shows that although Carr may have known that Fuselier had begun dating Alexander, there is no evidence of record that the two were living together prior to the accident or that Alexander had occasion to use the automobile with Carr's knowledge. In fact, Carr and Fuselier testified that Alexander had never used the automobile before the accident. In that vein, the record shows that the trial court weighed the testimony of other persons who thought that they had seen Alexander drive the vehicle prior to the accident and decided not to give that line of testimony much credence. The majority correctly states that Alexander did not awaken Fuselier because he was fatigued and intoxicated. However, not referred to in the majority opinion is Alexander's statement that she did not awaken Fuselier because she knew that he would not give her the keys to drive Carr's automobile.
When I view these inconsistencies in light of the well established jurisprudence on the question of manifest error and the roles of the various courts in the fact-finding process, I cannot say that the trial court was manifestly erroneous in its determination that the evidence did not show that Alexander was using the vehicle with the implied or express permission of Carr, the vehicle owner. Furthermore, there is no clear error in the trial court's determination that it was not reasonably foreseeable that Fuselier, the original permittee, would have allowed Alexander to drive. For the foregoing reasons, I would affirm the district court judgment as it relates to the State Farm policy. For these reasons, I respectfully dissent.
NOTES
[1] Charles Ray Moore, a mutual friend of Ms. Alexander and Mr. Fusilier, testified that he had seen Ms. Alexander drive the car in the past. Also, witnesses' Dennis Chambers and Theresa Royer testified that they had seen Ms. Alexander drive the car on previous occasions.