# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 18-322


RANDAL BOUDREAUX

VERSUS

COMMERCE AND INDUSTRY INS. CO., ET AL.



**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-3343
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

## BILLY HOWARD EZELL
## JUDGE

**********

Court composed of Billy Howard Ezell, Phyllis M. Keaty, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Gregory Paul Marceaux**
**Marceaux Law Firm**
**2901 Hodges St.**
**Lake Charles, LA 70601**
**(337) 310-2233**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Randal Boudreaux**

**Robert I. Siegel**
**Michael Edward Hill**
**Tara E. Clement**
**Gieger, Laborde & Laperouse, L.L.C.**
**701 Poydras Street, Suite 4800**
**New Orleans, LA 70139-4800**
**(504) 561-0400**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Commerce and Industry Insurance Company**

**EZELL, Judge.**

Commerce and Industry Insurance Company appeals a trial court judgment which granted a partial motion for summary judgment in favor of Randal Boudreaux and denied its motion for summary judgment. The trial court determined that Randal was a permissive user when he was driving a truck owned by owned by AES Drilling Fluids, LLC, which was covered by an uninsured/underinsured (UM) insurance policy issued by Commerce. The issue raised on appeal is whether Randal's son, Micah Boudreaux, had the authority to give permission to Randal to drive the truck.

## FACTS

Micah worked for AES and was given a truck to use as part of his job. On April 2, 2015, Micah was working on the water well at his house in Lake Charles. His father was living with him at the time, so he asked his father to take the truck and go to Lowe's to get some parts he needed. While at Lowe's, Randal ran into a friend who needed a ride home. Randal was on his way to drop the friend off when he stopped south of the intersection of Common Street and Madeline Street and was rear-ended by Keigan Hanks. Randal alleges he received injuries because of the accident.

Randal filed suit against Keigan and her insurer, State Farm Mutual Automobile Insurance Company. He also filed suit against Commerce, the UM insurer of AES. Subsequently, AES filed a motion for summary judgment seeking dismissal from the lawsuit. Randal then filed a partial motion for summary judgment claiming that he is an insured under the Commerce policy as a permissive driver.

A hearing on the cross motions for summary judgment was held on November 28, 2017. Denying Commerce's motion for summary judgment and granting Randal's partial motion for summary judgment, the trial court held that Randal was a permissive user under the Commerce insurance policy. Judgment was signed on January 3, 2018, declaring the judgment to be a final judgment. Commerce then appealed the judgment to this court.

## SUMMARY JUDGMENT

A moving party is entitled to summary judgment when it shows that there are no genuine issues of material fact and that it is "entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Summary judgment is favored by law and provides a vehicle by which "the just, speedy, and inexpensive determination" of an action may be achieved. La.Code Civ.P. art. 966(A)(2).

> Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Greemon v. City of Bossier City*, 2010-2828 (La. 7/1/11), 65 So.3d 1263, 1267; *Samaha v. Rau*, 2007-1726 (La. 2/26/08), 977 So.2d 880, 882; *Allen v. State ex rel. Ernest N. Morial–New Orleans Exhibition Hall Authority*, 2002-1072 (La. 4/9/03), 842 So.2d 373, 377. In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id.* at 765–66.

> On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be

able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *See* La. C.C.P. art. 966(D)(1); *see also Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

*Larson v. XYZ Ins. Co.*, 16-745, pp. 6-7 (La. 5/3/17), 226 So.3d 412, 416.

## DISCUSSION

Commerce argues that the trial court erred in finding that Randal had permission to use the truck and was insured under the Commerce insurance policy. Randal argues that he is an insured under the policy for contractual UM coverage, as he had express or implied permission to "occupy" the truck.

> When the existence of UM coverage under a policy of automobile insurance is at issue, . . . a two-step analysis [is required]: (1) the automobile insurance policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the policy; (2) if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated.

*Green ex rel. Peterson v. Johnson*, 14-292, p. 9 (La. 10/15/14), 149 So.3d 766, 773-74.

"[A]n insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code." *Id*. at 770; La.Civ.Code arts. 2045 – 2057. "According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent; this analysis is begun by reviewing the words of the insurance contract." *Id*. at 770-71.

The Louisiana endorsement under the Commerce policy provides as follows:

B.     Who Is An Insured

    If the Named Insured is designated in the Declarations as:

    . . . .

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" with the Named Insured's express or implied permission a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

. . . .

F.   Additional Definitions

As used in this endorsement

. . . .

2. "Occupying" means in, upon, getting in, on, out or off.

A passenger "occupying" a vehicle is "using" the vehicle and is an insured under the terms of policy entitled to UM coverage. *Bernard v. Ellis*, 11-2377 (La. 7/2/12), 111 So.3d 995; *Stunkard v. Langlinais*, 97-1006 (La.App. 3 Cir. 2/4/98), 708 So.2d 1117.

"AES DRILLING FLUIDS, LLC" is listed as the named insured under the policy. At the time of the accident, Randal was in the truck and using the truck, so therefore, he was "occupying" the truck. Under the clear terms of the Commerce policy, Randal is an insured if he had express or implied permission of the named insured, AES Drilling Fluids, LLC. Commerce disputes that Randal had its express or implied permission to drive the truck.

> Permission may be either express or implied. In the absence of express permission, implied permission generally arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle. *Francois v. Ybarzabal*, 483 So.2d 602 (La.1986). Whether an automobile is operated with the express or implied permission of the named insured is to be determined according to the facts and circumstances of each particular case. *Malmay v. Sizemore*, 493 So.2d 620 (La.1986).

*Stunkard*, 708 So.2d at 1120.

4

"The question of whether the vehicle's use was permitted is answered by determining whether it was reasonably foreseeable that the first permittee would allow someone else to drive the automobile." *Mahaffey v. State Farm Mut. Auto. Ins. Co.*, 95-641, p. 4 (La.App. 3 Cir. 2/28/96), 679 So.2d 129, 131, *writ denied*, 96-1689 (La. 10/11/96), 680 So.2d 650. "Where the named insured gives permission to another to use the car as his own, the possibility that the permittee might allow another to drive the automobile is clearly foreseeable." *Id*. "Even where there has been express prohibition against third drivers, it may be reasonably foreseeable that the initial permittee would allow another to use the car. The context in which the prohibition is made is a necessary ingredient in determining reasonable foreseeability." *Id*. at 132. "[T]he issue of coverage is subject to a reasonable foreseeability test. When applying such a test, we must look at all factors involved." *Id*.

In *Mahaffey,* this court found implied permission when an employee allowed his girlfriend to drive the car after the employer had orally admonished him not to let anyone else drive the car. In the present case, Commerce did put such a restriction in writing. Commerce presented evidence of its Human Resources Policy 17.0 Driving Rules and Guidelines, which was signed by Micah on August 13, 2014, and stated:

> It is the policy of AES Drilling Fluids;[sic] LLC that only authorized operators or drivers are allowed to drive company owned or leased vehicles.
>
> All vehicles are primarily for business use. Vehicles are provided for expressed business purposes and can only be operated by the assigned driver, or another approved driver of the company. Any deviation from the above policy by a driver is subject to disciplinary action and/or termination.

5

**I hereby acknowledge that I have read and understood AES Drilling Fluids, LLC's Driving Rules and Guidelines Policy:**

Micah also signed another document on August 13, 2014, entitled Authorization for Payroll Deduction for Company Vehicles, which states: "I, Micah Boudreaux, hereby acknowledge that I have read AES Drilling Fluids, LLC's Company Vehicle Use Policy, and understand its provisions. Furthermore, I declare that I choose to use a company vehicle and allow AES Drilling Fluids, LLC to deduct $80.77 per paycheck, for personal use of the vehicle."

When deposed, Micah agreed that he signed these documents at the training facility in Houston. At the time of his employment with AES, Micah was given the option of receiving $900.00 a month in extra pay for using his own personal vehicle for work travel. Micah explained that he instead opted in for a deduction of $80.77 from his paycheck every two weeks for insurance so he could have personal use of a company truck. He then sold his personal truck. Micah testified that he understood that the truck was his to use as he pleased on his time off. Although Micah agreed that AES was not aware that his father would drive his truck, he did not think he had to get AES's permission for someone to drive his truck when he was not working since he was paying for insurance to use AES's truck personally. After the accident, Micah's employment with AES was terminated for a policy violation of the driving rules.

We find it reasonably foreseeable that Micah would allow his father, who was living with him, to drive the truck when Micah was using it personally. Even the written policies he signed contemplated personal use. While the restriction noted that the truck was to be used primarily for business, it was not limited strictly to business use. He had personally paid for insurance to have personal use of the

6

truck.  It is reasonable to assume that Micah was not to allow anyone else to drive his truck when he was using the truck for business purposes but that it was his truck to use as he liked when he was using the truck for personal purposes.  Under these circumstances, it is reasonably foreseeable that Micah would allow someone else to use the truck to run an errand for him.  The trial court was correct in finding that Randal had implied permission from AES to use the truck and that the Commerce policy provided UM coverage to him.

For these reasons, the judgment of the trial court is affirmed.  Costs of this appeal are assessed to Commerce and Industry Insurance Company.

**AFFIRMED**.